Byron H. COFFIN, III; William S. Comer; Robert D. Floyd; William M. Foley; Jimmie L. Gresham; Ralph T. Hagins; Gary M. Howard; Joel W. Lawson; William J. McCaw; John T. Molan; C.L. Oswald; James N. Stagg; Dr. Hazel E. Switzer; all individually and as representatives of all other similarly situated individuals, Plaintiffs,

v.

The SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES et al., Defendants.

Civ. A. No. 82–803–15.

United States District Court, D. South Carolina, Columbia Division.

Jan. 10, 1983.

---

James L. Bell, Keith J. Perry and Brian Dumas, Columbia, S.C., for plaintiffs.

Stephen T. Savitz, Scott A. Koch, John L. Choate, William C. Hubbard, C. Tolbert Goolsby, Jr., Vance J. Bettis, Columbia, S.C., for defendants.

HAMILTON, District Judge.

The complaint in this matter purports to state eight causes of action against fourteen defendants stemming from alleged employment discrimination based on age. Plaintiffs assert claims for monetary, declaratory and injunctive relief under the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 621 *et seq.* and under 42 U.S.C. §§ 1983, 1985, 1986 and 1988 and the Fourteenth Amendment to the United States Constitution. Also, plaintiffs seek to impose liability on defendants based upon pendent state law claims sounding in tort.

Before the court for ruling at this time are six motions. First, by motion filed June 1, 1982, all defendants have moved this court to dismiss the first and second causes of action on the ground that ADEA as applied to the states (agencies) is unconstitutional. Second, by motion filed June 1, 1982, defendants the South Carolina Department of Social Services (hereinafter "DSS") and the Board of the South Carolina Department of Social Services (hereinafter "Board of DSS" or "Board") have moved this court to dismiss the first and second causes of action as against them on the ground that neither is an "employer" under the ADEA. Also, defendants DSS

and the Board of DSS have moved for dismissal of the third, fourth, fifth, sixth, seventh and eighth causes of action as against them on the ground that the Eleventh Amendment to the United States Constitution bars these claims. Third, by motion filed June 1, 1982, the individual defendants have moved this court to dismiss the first and second causes of action as against them on the ground that none of them in either his/her official or individual capacity is an "employer" under the ADEA. Fourth, by motion filed June 1, 1982, all defendants have moved the court for an order striking certain language from the complaint on the ground that the matters sought to be stricken are redundant, immaterial, impertinent and prejudicial to defendants. Fifth, by motion filed June 1, 1982, all defendants have moved the court for an order severing plaintiffs' claims on the ground that the claims do not relate to or arise out of the same transaction or occurrence. Sixth, by motion filed June 28, 1982, plaintiffs in their representative capacities as similarly situated past and present employees of defendants have moved to add as additional plaintiffs two persons so consenting to be represented.[1] The respective parties have presented to the court memoranda of authorities in support of and in opposition to the various motions, and oral arguments were heard on August 3, 1982.

## MOTION OF ALL DEFENDANTS TO DISMISS

■ Asserting that plaintiffs have not stated a claim upon which relief can be granted in that the ADEA, 29 U.S.C. § 621 *et seq.*, is an exercise of Congress' power under the commerce clause of the federal constitution and therefore the Tenth Amendment prohibits the application of the ADEA to the states, all defendants have moved the court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for

an order dismissing plaintiffs' claim that defendants have violated the ADEA. According to the position of the defendants, Congress exercised its power under the commerce clause and not under Section 5 of the Fourteenth Amendment when it enacted the ADEA and extended coverage to the states. Therefore, defendants urge that the ruling and analysis of the Supreme Court in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), require this court to find that the ADEA is unconstitutional as applied to these defendants because the Act affects state sovereignty and results in the impairment of traditional state functions.

While defendants cite authority supporting their contentions, the law in this circuit is clearly to the contrary. The Fourth Circuit Court of Appeals in the case of *Arritt v. Grisell,* 567 F.2d 1267, 1270–71 (4th Cir. 1977), has held that "in enacting ADEA and in extending it to the states Congress exercised its powers under Section 5 of the Fourteenth Amendment" and not pursuant to the commerce clause as argued by defendants. This court is bound by the doctrine of *stare decisis* to follow the *Arritt* decision, and accordingly defendants' motion to dismiss based on the unconstitutionality of the ADEA as applied to the states is overruled.

## MOTION OF DEFENDANTS DSS AND BOARD OF DSS TO DISMISS

As a second ground for their motion to dismiss the first and second causes of action as against them, defendants DSS and the Board of DSS contend that neither of them is the employer of plaintiffs as defined in the ADEA.[2]

According to this argument, the Board of DSS is authorized to employ only one person, the State Commissioner of Social Services. Section 43–1–50 of the Code of Laws of South Carolina, 1976, as amended (here-

---

1. The motion of defendants DSS and the Board of DSS filed June 14, 1982, for leave to expand the appendix to the memorandum in support of their motion to dismiss was not opposed by plaintiffs.

2. Neither plaintiffs nor defendants contest the obvious fact that DSS personnel are state paid employees.

inafter "South Carolina Code"). The State Commissioner, in turn, is authorized to employ, with the approval of the Board, the employees of DSS. Section 43–1–70 of the South Carolina Code. Therefore, neither DSS nor the Board, as entities, is the employer of plaintiffs, as contended by defendants.

Defendants' efforts to persuade the court by this statutory sleight-of-hand fail. The relevant inquiry is whether DSS and the Board can be "employers" as that term is defined under the ADEA. 29 U.S.C. § 630(b)(2) provides in pertinent part that the term "employer" means "a State ... and any agency or instrumentality of a State."

The State Department of Social Services (DSS) is a state agency and the Board of DSS is its governing body. Section 43–1–10 of the South Carolina Code provides:

> State Department of Social Services; subordinate divisions.
>
> There is created the *State* Department of Social Services, referred to in this Title as the *State* Department, with such subordinate divisions as may be created or authorized by law. The *State* Department shall operate under the South Carolina Board of Social Services. (emphasis added).

Also, case authority in this district dictates that DSS is a state agency which functions as an arm or *alter ego* of the State of South Carolina. *Gourdine v. Ellis*, 435 F.Supp. 882 (D.S.C.1977). This conclusion is in accord with cases finding other agencies to be *alter egos* of the state. *Belcher v. South Carolina Board of Corrections et al.*, 460 F.Supp. 805 (D.S.C.1978) (involving the South Carolina Board of Corrections and the South Carolina Department of Corrections); *United States v. State of South Carolina et al.*, 445 F.Supp. 1094, 1099–1100 (D.S.C.1977) (three judge court), *aff'd*, 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978) (involving, *inter alia*, the South Carolina State Board of Education and the South Carolina Department of Education). Thus, DSS and its governing body, the Board of DSS, are "employers" as that

term is defined under the ADEA since they are "a State (or its *alter ego*) ... and any agency or instrumentality of a State." 29 U.S.C. § 630(b)(2). (parenthetical matter added). Accordingly, the motion of defendants DSS and the Board to dismiss on the grounds that neither is an "employer" within the definition of the ADEA is accordingly denied.

Defendants DSS and the Board next address the third through eighth causes of action. The third, fourth and fifth causes of action are brought pursuant to 42 U.S.C. §§ 1983, 1986 and 1985, respectively. In the sixth, seventh and eighth causes of action, plaintiffs allege three pendent state law claims—civil conspiracy, malfeasance in office by reason of breach of fiduciary duties and intentional infliction of emotional distress, respectively. The fourth cause of action is brought only against the Board of DSS, while the third, fifth, sixth, seventh and eighth causes of action name DSS and the Board, *inter alia*, as defendants. Plaintiffs seek monetary, declaratory and injunctive relief as to these claims.

As grounds for their motion to dismiss the third through eighth causes of action as against them, defendants DSS and the Board submit that these claims are barred by the Eleventh Amendment to the United States Constitution and, consequently, the court lacks subject matter jurisdiction.

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Although, by its terms, the Amendment does not preclude suits against a state by its own citizens, the Supreme Court has held that a state is immune from suits brought in federal courts by its own citizens as well as by citizens of another state or citizens or subjects of any foreign state. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), citing *Hans v.*

*Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Duhne v. New Jersey,* 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); *Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); and *Employees v. Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). *See also Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) and *Southern Railway Co. v. South Carolina State Highway Department,* 246 F.Supp. 435 (D.S.C.1965). Moreover, it is well settled that the Eleventh Amendment bars a suit against a state agency, entity or institution—such as DSS and its governing body, the Board of DSS—which functions as an arm or *alter ego* of the state. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *United States v. State of South Carolina,* 445 F.Supp. 1094, 1099–1100 (D.S.C.1977) (three judge court), *aff'd,* 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978); *Belcher v. South Carolina Department of Corrections,* 460 F.Supp. 805 (D.S.C.1978); *Gourdine v. Ellis,* 435 F.Supp. 882 (D.S.C.1977); *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981); *Highfield Water Co. et al. v. Public Service Commission et al.,* 488 F.Supp. 1176, 1193 (D.Md.1980). Also, the Eleventh Amendment bars not only suits seeking monetary relief or equitable restitution against a state, *Edelman v. Jordan,* 415 U.S. at 651, 94 S.Ct. at 1350, but also suits seeking injunctive relief against a state. *Alabama v. Pugh,* 438 U.S. at 781, 98 S.Ct. 3057; *Laskaris v. Thornburgh,* 661 F.2d at 23; *United States v. State of South Carolina,* 445 F.Supp. at 1094.

■ The immunity afforded to a state by the Eleventh Amendment can be overcome if the state waives its constitutional immunity and consents to suit in federal court; or, with respect to the Thirteenth, Fourteenth and Fifteenth Amendments to the United States Constitution, Congress abrogates the state's immunity pursuant to its authority to enforce the substantive provisions of those amendments "by appropriate legislation." Amendment XIII, Section 2; Amendment XIV, Section 5; Amendment XV, Section 2.

■ As to the first issue of waiver and consent to suit in federal court, plaintiffs contend that the South Carolina General Assembly, by enacting the South Carolina Human Affairs Law, Section 1–13–10 *et seq.* of the South Carolina Code, waived the state's constitutional immunity afforded by the Eleventh Amendment and consented to suits such as this one brought in federal court against the state alleging employment discrimination based on age.

The Supreme Court in *Edelman v. Jordan,* 415 U.S. at 651, 94 S.Ct. at 1350, discussed the proper standard for determining whether a state has waived its constitutional protection under the Eleventh Amendment. The Court stated: "we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " 415 U.S. at 673, 94 S.Ct. at 1361, *quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). Moreover, the Court later ruled in *Florida Department of Health and Rehabilitative Services et al. v. Florida Nursing Home Association et al.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981), that a state's general waiver of sovereign immunity for one of its agencies effected by vesting that agency with the capacity to sue and be sued " 'does not constitute a waiver by the state of its constitutional immunity under the Eleventh Amendment from suit in federal court.' " 450 U.S. at 150, 101 S.Ct. at 1034, *quoting Florida Nursing Home Association et al. v. Page et al.,* 616 F.2d 1355, 1363 (5th Cir.1980).

A careful review of the statutory provisions relied upon by plaintiffs reveals no "express language" or "overwhelming implications from the text" that the State of South Carolina or its *alter egos,* DSS and the Board of DSS, have waived the Eleventh Amendment immunity and consented to this suit in federal court. Further, the doctrine of sovereign immunity continues to

prevail in South Carolina, *Belue v. City of Spartanburg,* 276 S.C. 381, 280 S.E.2d 49 (1981), and the Fourth Circuit Court of Appeals and this district court have so acknowledged. *Horton v. United States,* 622 F.2d 80, 82 (4th Cir.1980); *Belcher v. South Carolina Board of Corrections et al.,* 460 F.Supp. 805, 808 (D.S.C.1972).

■ As to the second issue of Congressional power to abrogate a state's Eleventh Amendment immunity, plaintiffs argue that Congress, by enacting the ADEA, 29 U.S.C. § 626 *et seq.,* nullified a state's Eleventh Amendment immunity to suits brought in federal court alleging denial of rights guaranteed by the ADEA. With regard to claims brought pursuant to the ADEA, Congress did exercise its authority under Section 5 of the Fourteenth Amendment to abrogate a state's Eleventh Amendment immunity and provide expressly for private damage actions against a state in federal court. *Arritt v. Grisell,* 567 F.2d 1267 (4th Cir.1977). *See also Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Title VII case). However, plaintiffs' third cause of action alleging employment discrimination based on age in violation of the equal protection clause of the Fourteenth Amendment is brought under 42 U.S.C. § 1983. Congress did not exercise its power to abrogate a state's Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. at 651, 675–77, 94 S.Ct. at 1350, 1361–62; *Sessions v. Rusk State Hospital,* 648 F.2d 1066 (5th Cir.1981); and *Gourdine v. Ellis,* 435 F.Supp. at 882, 885–86.

■ In summary, absent its consent to suit or federal legislation abrogating its Constitutional immunity, neither the State of South Carolina nor its *alter egos,* DSS and the Board of DSS, are subject to suit under 42 U.S.C. § 1983. Since the state has not waived its Eleventh Amendment immunity and consented to this suit in federal court and since Congress, in enacting 42 U.S.C. § 1983, did not override the state's immunity, plaintiffs' third cause of action

brought under 42 U.S.C. § 1983 is barred by the Eleventh Amendment to the extent it purports to state a claim against DSS and the Board (the *alter egos* of the State of South Carolina).

■ Additionally, the third cause of action fails to state a claim upon which relief can be granted against DSS and the Board of DSS because neither are "persons" within the meaning of 42 U.S.C. § 1983. This court is mindful of the Supreme Court decision in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), holding that local governmental units are liable as "persons" within the meaning of 42 U.S.C. § 1983. However, the definition of "persons" has not been found to include states, or their *alter egos,* and therefore the defendants DSS and the Board are not amenable to this section 1983 claim. *Quern v. Jordan,* 440 U.S. at 337–45, 99 S.Ct. at 1143–47.

■ As to plaintiffs' fourth and fifth causes of action purporting to state claims under 42 U.S.C. § 1986 and 42 U.S.C. § 1985, respectively, defendants DSS and the Board of DSS argue that the Eleventh Amendment is a bar to these claims. This court agrees. The same principles discussed and applied to plaintiffs' section 1983 claim are relevant here as well. Absent its consent to suit or federal legislation abrogating its Eleventh Amendment immunity, neither the state nor its *alter egos,* DSS and the Board, are subject to suit under 42 U.S.C. §§ 1986 and 1985.

■ Further, just as neither DSS nor the Board as *alter egos* of the state is a "person" within the meaning of 42 U.S.C. § 1983, neither one is a "person" within the meaning of 42 U.S.C. §§ 1985 and 1986. *Buckley v. Ossitt Church Furniture Co., Inc. et al.,* 23 (CCH) E.P.D. ¶ 30,914 (W.D.Wis. 1980), citing *Condosta v. Vermont Electric Cooperative, Inc.,* 400 F.Supp. 358 (D.Vt. 1975); *Boreta v. Kirby,* 328 F.Supp. 670 (N.D.Cal.1971), *aff'd,* 485 F.2d 582 (9th Cir. 1973); *Carreras Roena v. Camara de Comerciantes Mayoristas, Inc.,* 440 F.Supp. 217 (D.P.R.1976); *Veres v. County of Monroe,*

364 F.Supp. 1327 (E.D.Mich.1973), *aff'd without op.,* 542 F.2d 1177 (6th Cir.1976), *cert. denied,* 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). *See also Thompson v. State of New York,* 487 F.Supp. 212, 228–29 (N.D.N.Y.1979); *Ligon v. State of Maryland,* 448 F.Supp. 935, 940 (D.Md.1977).

Finally, plaintiffs' sixth, seventh and eighth causes of action purporting to state pendent state law claims for civil conspiracy, breach of fiduciary duties and intentional infliction of emotional distress, respectively, are barred by the Eleventh Amendment to the extent that they allege claims against DSS and the Board of DSS (*alter egos* of the State of South Carolina). In addition, as discussed above, the doctrine of sovereign immunity prevails in South Carolina. *Belue v. City of Spartanburg,* 276 S.C. at 381, 280 S.E.2d at 49; *Horton v. United States,* 622 F.2d at 80, 82 (4th Cir. 1980); *Belcher v. South Carolina Board of Corrections et al.,* 460 F.Supp. 805, 808 (D.S. C.1972). If plaintiffs were suing DSS and the Board on these claims in state court, the doctrine of sovereign immunity would bar their action. Likewise, the Eleventh Amendment bars suit in federal court on these claims against DSS and the Board.

In summary, the court is without subject matter jurisdiction over plaintiffs' third, fourth, fifth, sixth, seventh and eighth causes of action as against DSS and the Board of DSS in that these causes of action are barred by the Eleventh Amendment. Rule 12(b)(1) of the Federal Rules of Civil Procedure. Also, the third, fourth and fifth causes of action fail to state a claim against DSS and the Board of DSS upon which relief can be granted in that neither DSS nor the Board of DSS is a "person" within the meaning of 42 U.S.C. §§ 1983, 1985 and 1986.

### MOTION OF INDIVIDUAL DEFENDANTS TO DISMISS

As noted previously, plaintiffs have brought suit against the individual members of the Board of DSS in their official and individual capacities and against certain individual employees of DSS in their official and individual capacities. These individual defendants have moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that none of them in either his/her official or individual capacity is an "employer" within the meaning of the ADEA. Thus, the court must resolve two issues: first, whether the individual defendants in their official capacities are "employers" as that term is defined under the ADEA; and second, whether the individual defendants in their individual capacities are "employers" as that term is defined under the ADEA.

Section 630(b) of 29 U.S.C. provides in pertinent part that "[t]he term 'employer' means . . . a State . . . and any agency or instrumentality of a State." Since DSS is a state agency and its governing body, the Board of DSS, is a part of that agency, both are "employers" under the ADEA definition provision including "any agency or instrumentality of a State." Further, since DSS and the Board function as *alter egos* of the State of South Carolina, both are "employers" under the ADEA definition provision including "a State." Therefore, if claims against these individual defendants in their official capacities can be construed as claims against either DSS and the Board of DSS or the State of South Carolina, then the individual defendants in their official capacities are "employers" within the meaning of the ADEA.

As observed in *Monell v. Department of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978) and noted in *Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982), "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[3] In other words, claims against officials of a

---

**3.** Although the *Monell* and *Hughes* cases were decided in the context of 42 U.S.C. § 1983 claims, the court finds their reasoning on this point to be persuasive and applicable to the issue at hand.

state agency in their official capacities are in fact claims against that agency and the state. Here, plaintiffs' ADEA claims against the individual defendants in their official capacities are in fact claims against the State of South Carolina and its *alter egos,* DSS and the Board of DSS. Accordingly, the court finds that the individual defendants in their official capacities are "employers" as that term is defined under the ADEA.

The motion of the individual defendants in this regard is therefore denied.

The second issue of whether the individual defendants in their individual capacities are "employers" under the ADEA is not so easily resolved. In support of their motion to dismiss, the individual defendants rely upon a literal reading of the pertinent ADEA definition provisions. According to this argument, the term "employer" means a person engaged in an industry affecting commerce; any agent of such a person; and a state and its agencies but not an agent of a state and its agencies. Since the individual defendants are agents of a state and one of its agencies, they are not "employers" under the ADEA as these defendants would have the court find. This argument, while imaginative, is nonetheless without merit.

In aid of analyzing this matter, the court refers to interpretations of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e–2000e–17. Although not identical, the substantive and procedural provisions of the ADEA and Title VII are similar. *Compare* 29 U.S.C. §§ 623, 630 (ADEA substantive provisions), *with* 42 U.S.C. §§ 2000e, 2000e–2, 2000e–3 (Title VII); *compare* 29 U.S.C. §§ 211(b), 216(b), 216(c), 217, 626(b) (ADEA enforcement provisions), *with* 42 U.S.C. § 2000e–5 (Title VII). As Judge Richey has pointed out, "[t]he prohibitory language of ADEA is almost identical to that of Title VII, and some courts have relied upon Title VII precedent in interpreting comparable ADEA provisions. *See, e.g., Oscar Mayer and Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct.

2066, 2071, 60 L.Ed.2d 609 (1979); *Hodgson v. First Federal Savings and Loan Association,* 445 [455] F.2d 818, 820 (5th Cir.1972)." C. Richey, *Manual on Employment Discrimination and Civil Rights Actions in the Federal Courts,* at C1 (Federal Judicial Center, revised edition, 1981).

Title VII definition provisions relevant to the issue at hand are:

(a) The term "person" includes one or more individuals, governments, governmental agencies....

(b) The term "employer" means a person engaged in an industry affecting commerce ..., and any agent of such a person, .... 42 U.S.C. § 2000e.

The comparable ADEA definitions relevant here provide:

(a) The term "person" means one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons.

(b) The term "employer" means a person engaged in an industry affecting commerce .... The term also means (1) any agent of such a person, and (2) a State ... and any agency or instrumentality of a State.

29 U.S.C. § 630.

The case of *Kelly v. Richland School District 2,* 463 F.Supp. 216 (D.S.C.1978), a Title VII action, is pertinent to this discussion. There, by way of a motion to dismiss, one defendant, the administrative superintendent of the school district, argued that the personal claim against him should be dismissed because he was not an "employer" under Title VII. After examining the Title VII definition provisions, the court concluded that the school district superintendent in his individual capacity could be an "employer" as that term is defined under Title VII. In denying the motion, Judge Hemphill stated:

In a Title VII action the determination to be made is whether or not the person complained of is an "employer" within the meaning of the statute. Section 2000e(b) defines an employer as "a person engaged in an industry affecting com-

merce who has fifteen or more employees for each working day in each of twenty or more calendar weeks ... and any agent of such a person." (Emphasis added.) Section 2000e(a), as amended, includes government, governmental agencies, and political subdivisions as persons for Title VII purposes. As such, if the School District is an employer under the Act, (and this is not disputed) Corley, if he is an agent of the District, is also an employer and can be held accountable for its violation. 463 F.Supp. at 218.

The *Kelly* case indicates that the critical inquiry is whether the defendant is an "employer" within the meaning of Title VII. The defendant's "status" or "capacity," whether official or individual, is irrelevant. Judge Hemphill emphasized this point by quoting from *Hanshaw v. Delaware Technical and Community College,* 405 F.Supp. 292, 296 n. 10 (D.Del.1975):

> Whether such consideration took place as a private person or as an officer is of no import here. Title VII actions do not contain "under color of state law" problems associated with Section 1983 actions. If the person against whom the complaint is filed is within the definition of "employer", his "capacity" during the alleged discriminatory events is irrelevant, so long as the alleged discrimination relates to employment.

A similar result was reached in *Schaefer v. Tannian,* 394 F.Supp. 1128, 1132 (E.D. Mich.1974), another Title VII action, where the principal officials charged with the operation of the Detroit Police Department and with responsibility for its hiring and assignment practices were found to come within the Title VII definition of "employer" because they could be deemed agents of the City of Detroit or the Detroit Police Department.

Of particular significance to the question at hand is the case of *Goodman v. Board of Trustees of Community College,* 498 F.Supp. 1329 (N.D.Ill.1980), which involved Title VII and ADEA claims. There one defendant, the college president, moved for dismissal on the grounds that he was ex- empt from liability under Title VII and ADEA because he was not an "employer" as that term is defined by the two acts. The court saw no reason to distinguish between the definition of "employer" under Title VII and ADEA and accordingly denied the motions, ruling that the college president, as an agent of the college board of trustees, could be an "employer" within the meaning of Title VII and ADEA.

With regard to the Title VII claim against the college president, the court stated:

> Section 2000e(b) defines "employer" as a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, *and any agent of such a person ...*" (emphasis added). The 1972 amendments to Title VII extended the definition of "person" to include "governments, government agencies, [and] political subdivisions," 42 U.S.C. § 2000e(a). Pursuant to the clear language of the statute, therefore, if the Board of Trustees is an employer and Koeller was its agent, for the purposes of this litigation he also would be an employer who could be held accountable for any statutory violations. *Kelly v. Richland School District 2,* 463 F.Supp. 216, 218 (D.S.C.1978). As regards this issue, defendant Koeller does not dispute that the Board of Trustees is an employer. Rather, he appears to be contending that he was not the Board's agent.
>
> Evidentiary materials submitted to the court provide facts from which defendant Koeller's agency relationship with the Board of Trustees can reasonably be inferred. In this respect, plaintiff's Exhibit B is of considerable significance. Exhibit B reveals that the Board of Trustees had specifically authorized President Koeller to make hiring recommendations within his administration. Accordingly, when actually making those initial hiring decisions, defendant Koeller likely was acting as an agent for the Board, and as such was an employer for the purposes of Title VII.

Other courts have found an agency relationship to lie in similar factual settings. In *Schaefer v. Tannian,* 394 F.Supp. 1128, 1132 (E.D.Mich.1974), the court held that officials of the Detroit Police Department charged with the operation of the Department and with responsibility for its hiring and assignment practices were "agents" coming within the provisions of the statute. In *Kelly, supra,* one of the defendants, the administrative superintendent of the school district, moved for dismissal on grounds virtually identical to those now being raised by defendant Koeller. The court, however, found the administrative superintendent to be an "agent". This court accordingly, because it believes for purposes of said motion that he may have been the Board of Trustees' agent, will deny this motion to dismiss defendant Koeller. 498 F.Supp. at 1332.

With regard to the ADEA claim against the college president, the court stated:

Defendant Koeller has moved, pursuant to Rule 12(b)(1), Fed.R.Civ.P., for dismissal of this count on the ground that he is not an employer under the ADEA and, therefore, is exempt from liability under the statute. Similar statutory considerations to those which led the court to deny defendant Koeller's motion to dismiss on this ground under Title VII, however, also apply here. President Koeller is subject to suit under the ADEA because, as an agent he is an employer within the meaning of 29 U.S.C. § 630(b).

Section 630(b) defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ... Also included in the definition of "employer" are (1) *any agent of such a person,* and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State ..." (emphasis added).

This court has previously stated its reasons for finding that defendant Koeller is an "agent" of the MVCC Board of Trustees. As such an "agent", as is also true under Title VII, he is an "employer" within the meaning of the ADEA. That being so, defendant Koeller's motion to dismiss on this ground is denied. 498 F.Supp. at 1335–36.

By way of summary, the court first observes that the question of whether an agent of a state agency can be an "employer" under Title VII and therefore subject to personal liability is resolved by reference to the explicit statutory language of 42 U.S.C. § 2000e(a) and (b). *Kelly v. Richland School District 2,* 463 F.Supp. at 218 and *Goodman v. Board of Trustees of Community College,* 498 F.Supp. at 1332. However, the question of whether an agent of a state agency can be an "employer" under ADEA and therefore subject to personal liability is not so readily resolved by reference to statutory language of ADEA. Although similar, the definition provisions of Title VII and ADEA are not identical and, unlike the comparable Title VII provision, it is not clear from the face of the ADEA statute that the definition of "employer" includes the agents of state agencies.

■ After careful consideration, this court finds no compelling reason to distinguish between the Title VII definition of "employer" and the ADEA definition of "employer" for purposes of this motion. *Goodman v. Board of Trustees of Community College,* 498 F.Supp. at 1335–36. Indeed, if Title VII claims had been brought in the instant action, the individual defendants, as agents of a state agency, would clearly come within the Title VII definition of employer.[4] In view of the common purpose shared by Title VII and ADEA; *i.e.,* the elimination of discrimination from the workplace; and the fact that the ADEA is

---

4. In the private sector, the agents of a corporation can be "employers" for purpose of ADEA. In the case of *Barkley v. Carraux,* 533 F.Supp. 242, 245 (S.D.Tex.1982), the court ruled that two individual defendants, as agents of the corporate defendant, were "employers" as that term is defined under ADEA, 29 U.S.C. § 630(a) and (b), and thus could be sued individually.

remedial in nature and thus should be liberally construed, *Oscar Mayer and Co. v. Evans,* 441 U.S. 750, 765, 99 S.Ct. 2066, 2076, 60 L.Ed.2d 609 (1979) (Blackmun, J., concurring), the court sees no reason why comparable provisions pertaining to the definition of "employer" should be construed differently.

Accordingly, the motion of the individual defendants in this regard is denied.

## MOTION OF ALL DEFENDANTS TO STRIKE

All defendants move the court pursuant to Rule 12(f) of the Federal Rules of Civil Procedure for an order striking from the complaint the following language:

1. Paragraph IV in its entirety, including Exhibit A.

2. The following language from paragraph XXXIV: "gave testimony at the aforementioned South Carolina Human Affairs Commission hearing, and".

3. The following language from paragraph XXXVI: "This plaintiff also gave testimony at the aforementioned SHAC hearing."

4. The following language from paragraph XXXVII: "such action now being seen on the merits by the SHAC findings dated December 18, 1981."

5. The following language from paragraph XXXVIII: "gave testimony at the aforementioned SHAC hearing and".

6. The following language from paragraph XXXIX: "gave testimony at the aforementioned SHAC hearing and".

7. The following language from paragraph XL: "Further, this individual gave testimony at the above-mentioned SHAC hearing."

8. The following language from paragraph XLIII: "he gave testimony to such effect before SHAC on the aforementioned dates."

Rule 12(f) of the Federal Rules of Civil Procedure provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

The court first considers defendants' motion to strike insofar as it pertains to references of certain individual plaintiffs testifying at the SCHAC hearing (# 2, # 3, # 5, # 6, # 7, and # 8, *supra*). As part of their lawsuit, plaintiffs are complaining that defendants took certain retaliatory actions against them because they appeared and testified at the SCHAC hearing. Plaintiffs submit that the language which defendants find objectionable is necessary for them to state their claims in this regard. This court agrees with this position.

The statutory basis for plaintiffs' retaliation claims appears to be 29 U.S.C. § 623(d) of the ADEA which provides in relevant part:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

If plaintiffs are to state claims under 29 U.S.C. § 623(d), reference must necessarily be made to their actions which allegedly prompted defendants to retaliate. Such allegations are not "redundant, immaterial, impertinent or scandalous matter" under Rule 12(f), but are essential elements of plaintiffs' retaliation claims. Thus, the motion to strike insofar as it pertains to references of certain individual plaintiffs testifying at the SCHAC hearing is denied. In so ruling, the court merely finds that the subject allegations are proper for stating a claim based on the alleged retaliation of defendants.

The motion to strike insofar as it pertains to # 1 above, "Paragraph IV in its

entirety, including Exhibit A," is granted. In *Cox v. Babcock and Wilcox Co.,* 471 F.2d 13 (4th Cir.1972) the Fourth Circuit Court of Appeals ruled that a trial judge's decision to reject an EEOC investigative report was unassailable in that the admission of evaluative public records was discretionary with the court. In the recent case of *United States v. MacDonald,* 688 F.2d 224 (4th Cir.1982), the Fourth Circuit referred to its decision in *Cox* which had relied upon the dissent from the denial of rehearing in *Smith v. Universal Services, Inc.,* 454 F.2d 154, 160 (5th Cir.1972) (Dyer, J., dissenting). The Fourth Circuit stated: "[a]s *Smith* made clear, such reports at times suffer from an undue risk of prejudice. To the extent they contain credibility determinations, they tend to undermine the exclusive province of the jury." It is the opinion of this court that the SCHAC report suffers from these two infirmities; *i.e.,* the report may unduly prejudice the jury whose responsibility it is to make a *de novo* determination of plaintiffs' claims and its conclusions are based in part on credibility determinations concerning the witnesses appearing at the hearing which undermine the exclusive province of the jury.[5]

In view of this decision to grant defendants' motion to strike insofar as it pertains to # 1 above, the court is constrained to grant the motion to strike as it pertains to # 4 above, "The following language from paragraph XXXVII: 'such action now being seen on the merits by the SHAC findings dated December 18, 1981.'"

### MOTION OF ALL DEFENDANTS TO SEVER

Contending that plaintiffs' claims do not relate to or arise out of the same transaction or occurrence, all defendants have moved the court pursuant to Rules 20(a) and 21 of the Federal Rules of Civil Procedure for an order severing plaintiffs' claims.

Rule 20(a) of the Federal Rules of Civil Procedure provides in relevant part:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative; any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

The basis for defendants' motion is their contention that two separate and distinct employment actions are the sources of plaintiffs' claims. According to this argument, some of the plaintiffs were affected by one of these actions, while the remaining plaintiffs were affected by the other. In their supplemental memorandum supporting the motion to sever, defendants state: "[t]his Court must determine if there is a logical relationship among the acts which have befallen the plaintiffs. Although it is not articulated in the complaint, the plaintiffs are complaining of two discrete acts: an organizational renewal undertaken in 1978, and a reduction in force (RIF) implemented in October 1981 due to drastic cuts in federal funding .... The Organizational Renewal and the RIF are not related in any way." In passing, the court notes that this assertion in defendants' memorandum is not otherwise supported by affidavits or other evidentiary matter.

In bringing this action to be heard both individually and on behalf of other employees similarly situated, plaintiffs are proceeding under 29 U.S.C. § 216(b). Section 626(b) of ADEA, 29 U.S.C., provides for enforcement in accordance with the powers,

---

5. Of further concern to the court is the apparent circumstance that defendants were not permitted to question on cross examination the witnesses testifying at the SHAC hearings. Furthermore, in the jury trial to follow the risk of prejudice to the defendants is too apparent to be disregarded.

remedies and procedures of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Section 216(b) of the Act provides in pertinent part that, "[a]ction to recover . . . liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

The complaint alleges, *inter alia,* a plan intended to and having the effect of discriminating against plaintiffs due to their age. It is also alleged that such plan was denoted "organizational renewal" and that such plan was intended to and did have and continues to have the effect of discriminating against plaintiffs due to their age during the time period from February, 1978 until the present. In response to defendants' motion for severance, plaintiffs maintain that they have stated related claims on their own behalf and for other employees similarly situated and that the claims as alleged arise out of the same series of transactions or occurrences. Rule 20(a), Federal Rules of Civil Procedure.

 Joinder of parties is proper only if the two specific requisites of Rule 20(a) are met: (1) a right to relief must be asserted by each plaintiff relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all the plaintiffs will arise in the action. 7 C. Wright and A. Miller, *Federal Practice and Procedure* § 1653 at 268–69 (West 1972). There is little doubt that the second of these requirements is satisfied here. All plaintiffs have alleged that they are the victims of employment discrimination based on age. As such, a common question of law is present.

 Regarding the first requirement, it is not apparent to the court at this early stage in the proceedings [6] that the claims alleged by plaintiffs do *not* relate to or arise out of the same series of transactions or occurrences. Although defendants main-

tain that plaintiffs are really "complaining of two discrete acts," their contention is unsupported by evidentiary materials and is insufficient in the face of pleadings which allege a plan that was intended to and did have and continues to have the effect of discriminating against plaintiffs due to their age during the time period from February, 1978 until the present. The complaint further alleges that all plaintiffs sustained injuries resulting from an intentional plan to discriminate against them because of their age. While it is alleged that plaintiffs have had differing adverse employment actions directed against them, all of these employment actions are alleged to be related to the same series of transactions or occurrences, the "organizational renewal."

The motion of all defendants to sever plaintiffs' claims is denied at this time.

## MOTION OF PLAINTIFFS TO ADD ADDITIONAL PLAINTIFFS

Plaintiffs in their representative capacities as similarly situated past and present employees of defendants have moved to add as additional plaintiffs two persons so consenting to be represented—Harry Harley Mills, Jr., and Richard H. Stowers. 29 U.S.C. § 216(b). In view of the court's ruling denying defendants' motion for severance, this motion is granted.

For the foregoing reasons and based on the cited authorities, IT IS, THEREFORE, ORDERED that:

1. The motion of all defendants to dismiss the first and second causes of action on the ground that the ADEA as applied to the states is unconstitutional shall be and the same hereby is denied.

2. The motion of defendants DSS and the Board of DSS to dismiss the first and second causes of action as against them on the ground that neither is an "employer" under the ADEA shall be and the same hereby is denied. The motion of defendants DSS and the Board of DSS to dismiss the

---

**6.** The record now before the court includes the complaint, the answer of the individual defend-

ants and the various motions discussed herein.

third, fourth, fifth, sixth, seventh and eighth causes of action as against them on the ground that the Eleventh Amendment to the United States Constitution bars these claims shall be and the same hereby is granted.

3. The motion of the individual defendants to dismiss the first and second causes of action as against them on the ground that none of them in either his/her official or individual capacity is an "employer" under the ADEA shall be and the same hereby is denied.

4. The motion of all defendants to strike certain language from the complaint on the ground that the language is redundant, immaterial, impertinent and prejudicial to defendants shall be and the same hereby is granted in part and denied in part as hereinabove provided.

5. The motion of all defendants to sever plaintiffs' claims on the ground that the claims do not relate to or arise out of the same transaction or occurrence shall be and the same hereby is denied.

6. The motion of plaintiffs in their representative capacities as similarly situated past and present employees of defendants to add additional plaintiffs shall be and same is hereby granted.