Neal Stanley BROGDON, Plaintiff,

v.

ALABAMA DEPARTMENT OF ECO-
NOMIC AND COMMUNITY AF-
FAIRS, et al., Defendants.

Civ. A. No. 93–T–1478–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 26, 1994.

Patricia Davis Warner, Campbell, Warner & McBryar, Montgomery, AL, Marion F. Walker, Birmingham, AL, for plaintiff.

Edward E. Davis, Alabama Dept. of Economic and Community Affairs, Jeffery Harris Long, James H. Evans, Office of the Atty. Gen., Montgomery, AL, for defendants.

### ORDER

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff Neal Stanley Brogdon claims that, because of his age, he was deprived of employment opportunities by the Alabama Department of Economic and Community Affairs (ADECA). He has named ADECA and several of its officials and employees as defendants. He seeks relief under both federal and state law: the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C.A. §§ 621 to 634; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17; 42 U.S.C.A. §§ 1985 and 1988; the fourteenth amendment to the United States Constitution, as enforced through 42 U.S.C.A. § 1983;

Article I, §§ 1, 4, 6 and 22 of the Constitution of Alabama of 1901; and state-law claims for intentional infliction of emotional distress and breach of the covenant of good faith and fair dealing. Brogdon brings a "kitchen sink" type complaint, alleging almost any theory that comes to mind without careful thought and research.[1] The case is now before the court on defendants' motion to dismiss or, alternatively, for summary judgment. For the reasons that follow, the motion will be granted in part and denied in part.

## I. BACKGROUND

Brogdon is a tenured merit system employee of ADECA. Prior to his employment with this state agency, he worked for many years as a writer and reporter for a local newspaper. Brogdon began working for ADECA in 1988, after he had applied with the state merit system and qualified for two classifications, Information Specialist III and Administrative Assistant I. He was first assigned to the Communications and Information Division and was employed as an Administrative Assistant I, which commands a lower salary range and lower benefits than an Information Specialist III. Nevertheless, Brogdon states that he was assigned responsibilities that mirrored those set forth in the state merit system classification of Information Specialist III. His duties were to cover all aspects of public relations, including producing a newsletter, creating press releases, and acting as a liaison with the press for ADECA and the governor's office. He says he performed all assignments in an exemplary manner and received correspondingly high evaluations. Brogdon states that he inquired about being reassigned to the Information Specialist III position and was assured that he would be appropriately classified in a merit system position that corresponded more closely with his job duties and that carried a higher salary range and greater benefits. On July 24, 1992, Brogdon was notified by a letter from the Director of ADECA that he was being transferred from the Communications and Information Divi-

sion to the Community Services Division of ADECA. Brogdon was 60 years old at that time. Along with Brogdon, 60 other ADECA employees were transferred, of which 63% were over 40 years old. Shortly after Brogdon's transfer, the director appointed Paul Sullivan, a younger male, to work in the Communications and Information Division. Sullivan assumed many of the responsibilities previously assigned to Brogdon.

In October 1992, Brogdon filed an age discrimination claim with the Equal Employment Opportunity Commission (EEOC), challenging his 1992 transfer. He received a "Notice of Right to Sue" and subsequently filed this lawsuit.

## II. DISCUSSION

A. *Standards for Motion to Dismiss and Summary Judgment*

■ In considering defendants' motion to dismiss, the court accepts Brogdon's allegations as true, Fed.R.Civ.P. 12(b); *Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir.1990), and construes Brogdon's complaint liberally in his favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial).

---

1. As a result, as is evident from this order—in particular, the footnotes—Brogdon has unnecessarily caused opposing counsel for the defendants to research theories that Brogdon did not really wish to pursue. Moreover, because his complaint is so broad in its reach, the court has had great difficulty determining what his true claims are.

### B. *Brogdon's Claim under the ADEA*

#### i. Individual and Official Liability under the ADEA

Brogdon has brought suit not only against ADECA itself but the former and current directors of ADECA, Gene Anderson and David Hooks, in both their individual and official capacities. He has also sued several members of the ADECA staff in their individual and official capacities: (1) Paul James Thompson, former Chief of the Communications and Information Division of ADECA and Brogdon's former direct supervisor; (2) Susan Boxx, current Chief of the Communications and Information Division; (3) Lamar Higgins, Executive Assistant to Director Hooks; and (4) Vivian Ingram, Human Resources Manager. These latter four defendants contend that none of them is liable as an "employer" within the meaning of the ADEA.

■ First of all, the court agrees that none of the six defendants is liable under the ADEA in his or her individual capacity. In *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583 (1993), the Ninth Circuit Court of Appeals held that there was no individual liability under the ADEA. The court explained that the statutory scheme of the ADEA itself indicates that Congress did not intend to impose individual liability on employees. The ADEA limits liability to employers with 20 or more employees, 29 U.S.C.A. § 630(b), in part because Congress did not want to burden small entities with the costs associated with litigating discrimination suits. Surely Congress would not wish to impose the same civil liability on individual employees that it decided to remove from small entities with limited resources. *Id.* at 587. *See also Birkbeck v. Marvel Lighting Corporation*, 30 F.3d 507, 510 (4th Cir.1994) (holding no individual liability under the ADEA).

This conclusion is supported by the law of the Eleventh Circuit Court of Appeals. In *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991) (per curiam), the court held that individual capacity suits under Title VII are inappropriate because the "relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Id.* at 772. *See also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir.1992) (Title VII "suits may be brought only against individuals in their official capacity and/or the employing entity"). This holding as to Title VII is instructive, if not controlling, as to the ADEA. As the First Circuit Court of Appeals has explained,

"As the substantive provisions of the ADEA were derived *in haec verba* from Title VII, ... as was the statutory definition of 'employer' (which relates to the scope of the law's substantive provisions), we may look to constructions of the term in the Title VII ... context for guidance. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n. 11, 71 L.Ed.2d 234, *rehearing denied*, 456 U.S. 940, 102 S.Ct. 2001, 72 L.Ed.2d 461 (1982) (ADEA modeled after Title VII); *see also EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 36 (3d Cir.1983)."

*Rivas v. Federacion de Associaciones Pecuarias de Puerto Rico*, 929 F.2d 814, 820 n. 15 (1st Cir.1991); *see also Miller*, 991 F.2d at 587 ("The liability schemes under Title VII and the ADEA are essentially the same in aspects relevant"); *Coffin v. South Carolina Dept. of Social Services*, 562 F.Supp. 579, 589 (D.S.C.1983) (court found no compelling reason to distinguish between Title VII and ADEA definition of "employer"); *Moore v. Reese*, 817 F.Supp. 1290, 1296 n. 11 (D.Md. 1993) ("the majority of courts analogize the definition of 'agent' in ADEA cases from its definition in Title VII cases"). The defendants therefore have no personal liability under the ADEA.

■ The court cannot, however, agree with the defendants that they cannot be liable in their official capacities. As the Supreme Court has explained, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). "It is not a suit against the official personally," the Court continued, "for the real party in interest is the entity." *Id.* Because, as explained below, ADECA is a proper defendant, the defendants in their official capaci-

ties are also proper defendants. Nevertheless, the court sees no need to keep all six of the defendants in this litigation. An employer is strictly liable under respondeat superior for the actions of its supervisors that amount to discrimination resulting in tangible job detriment to the subordinate employee. *Cf. Henson v. City of Dundee,* 682 F.2d 897, 910 (5th Cir.1982) (applying Title VII law); *see also Sparks v. Pilot Freight Carriers, Inc.* 830 F.2d 1554, 1562 n. 14 (11th Cir.1987) (principles for finding liability under Title VII also parallel those for finding liability under ADEA). It is therefore sufficient that only ADECA and its current director, David Hooks, remain in this lawsuit. Under the theory of respondeat superior, ADECA and its director, in his official capacity, are responsible for the actions of all those under them. All defendants, except ADECA and its current director, will therefore be dismissed as to Brogdon's ADEA claim.

#### ii. Eleventh Amendment Immunity and the ADEA

■ ADECA and Hooks, in his official capacity, contend that, under the eleventh amendment, they are immune from suit. Although the Eleventh Circuit Court of Appeals has yet to rule on the issue, a growing number of other appellate courts has held that Congress enacted ADEA under § 5 of the fourteenth amendment and thus intended, when it passed the Act, to abrogate the states' eleventh amendment immunity. *See, e.g., Hurd v. Pittsburgh State University,* 29 F.3d 564 (10th Cir.1994); *Heiar v. Crawford County, Wis.,* 746 F.2d 1190 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694 (1st Cir.1983). This court chooses to follow these courts, and thus holds that Congress intended to abrogate eleventh amendment immunity to the states in the ADEA. The eleventh amendment does not protect ADECA and Hooks from suit under the ADEA.

#### iii. Sufficiency of Notice under the ADEA

All defendants, except ADECA and its former director, contend that they cannot be liable under the ADEA because Brogdon failed to name them in his EEOC charge. Of these remaining defendants, in light of the above discussion, only the current director, Hooks, is properly a defendant, albeit only in his official capacity.

■ Generally, only parties previously identified in charges filed with the EEOC are subject to liability under Title VII. 42 U.S.C.A. § 2000e–5(f)(1). *See Terrell v. United States Pipe & Foundry Co.,* 644 F.2d 1112, 1122 (5th Cir.1981), *rev'd on other grounds,* 456 U.S. 955, 102 S.Ct. 2028, 72 L.Ed.2d 479 (1982). In *Terrell,* the former Fifth Circuit initially suggested that "[o]nly parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII." *Id.* at 1122. A few paragraphs later, however, the court clarified that this directive is not to be given a strictly literal application but should be "liberally interpret[ed]." *Id.* at 1124. Thus, the parties potentially liable in a Title VII action are to be defined by "[t]he reasonable limits of an investigation potentially triggered by [the] EEOC charge." *Id.* at 1123. *See also Hamm v. Board of Regents of the State of Fla.,* 708 F.2d 647, 649–650 (11th Cir.1983) (potential defendants determined by scope of EEOC investigation which could reasonably have been expected to grow out of EEOC charge).

■ Here, Brogdon's EEOC charge named ADECA as a party. Because the court has dismissed the ADEA claim against Hooks in his individual capacity, the only question before the court is whether to dismiss him in his official capacity. In his official capacity, Hooks is chief executive officer of ADECA. As explained above, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. at 166, 105 S.Ct. at 3105. Naming ADECA in the EEOC charge, then, is tantamount to naming Hooks in his official capacity. The court concludes, therefore, that Hooks was within "[t]he reasonable limits of an investigation potentially triggered by [the] EEOC charge," *Terrell,* 644 F.2d at 1123, and is therefore subject to an ADEA suit. The court will not dismiss him from this lawsuit because Brogdon failed to name him in his

EEOC charge.[2] In conclusion, Brogdon may pursue his ADEA claim against only ADECA and Hooks, in his official capacity.[3]

### C. Brogdon's Claim under Title VII and the Fourteenth Amendment's Equal Protection Clause as Enforced through § 1983

■ Brogdon also rests his age discrimination claim on Title VII and the equal protection clause as enforced by § 1983. The court is unaware of, and Brogdon has not pointed to, any case law even suggesting that Title VII and the equal protection clause prohibit age discrimination. His age discrimination claim, to the extent it rests on these constitutional and statutory provisions, must be dismissed.

### D. Brogdon's Claim under the Fourteenth Amendment's Due Process Clause as Enforced through § 1983

■ The defendants claim that, although Brogdon has a property interest in his state merit system job under Alabama law, he does not have a property interest in the position of Information Specialist III—a position which he does not hold and has never held—or in any other particular position within state government other than the one he holds. They contend that his due process claim should therefore be dismissed.

The defendants rely on *Maples v. Martin*, 858 F.2d 1546 (11th Cir.1988). There, five tenured professors at Auburn University had been involuntarily transferred from the Mechanical Engineering Department to other engineering departments at the school. Like Brogdon, the professors alleged that their transfer violated their due process rights as enforced by § 1983. The court wrote that, "the analogy to the job termination context is not determinative." *Id.* at 1550. "Transfers and reassignments," the court continued, "have generally not been held to implicate a property interest. *See Volk v. Coler*, 845 F.2d 1422, 1430 (7th Cir.1988) (plaintiff has no property interest in employment at particular office of state welfare agency); *Childers v. Independent School Dist.*, 676 F.2d 1338, 1341 (10th Cir.1982) (tenured teacher has property interest in continued employment but not in particular assignment); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir.1985) (reappointment of nontenured faculty member with concurrent reduction in teaching duties does not deprive plaintiff of property interest)." *Id.* The *Maples* court granted the defendants' summary judgment motion on the due process claim, stating that none of the plaintiffs had suffered any loss of income, rank, or tenure as a result of the transfers. *Id.* at 1549 n. 4.

■ Brogdon argues that reliance on *Maples* is misplaced because, whereas the plaintiffs in *Maples* were able to continue teaching in their area of specialization, he "has been denied access to his prior job where skills developed over a lifetime were

**2.** The court notes that, for the same reasons, permitting the ADEA claim to proceed against both ADECA and Hooks in his official capacity would not afford Brogdon any additional relief under the ADEA, if he succeeds in this action, for ADECA and Hooks in his official capacity are essentially interchangeable.

**3.** The defendants argue that, because Paul Sullivan was gubernatorial appointee and not a member of the state merit system, Brogdon should not be allowed to compare himself with Sullivan. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The defendants maintain that Sullivan is not an "employee" within the meaning of 29 U.S.C.A. § 630(f) of the ADEA. This is an evidentiary issue better addressed at trial.

The defendants also argue that Brogdon has failed to submit sufficient evidence to support his ADEA claim. Brogdon responds that the issue is premature because, at the time of submission of the pending motion, he had not had sufficient time to complete discovery. The court agrees with Brogdon.

The defendants also assert that, if Brogdon is challenging under the ADEA both his 1992 transfer and his initial employment in 1988, then his challenge to his initial employment is time barred. Admittedly, it appears from Brogdon's complaint that he is challenging his 1988 initial employment. In his brief on the pending motion, however, he addresses only his 1992 transfer. The court is therefore assuming that Brogdon's ADEA challenge is limited to his 1992 transfer. If the court is incorrect, Brogdon should so inform the court within 14 days, with an explanation as to why his 1988 initial employment is not time barred under the ADEA.

utilized on a daily basis."[4]  He maintains that, "Such a position brought [him] respect and undoubtably a certain degree of power."[5]  Whether Brogdon has suffered a loss of reputation, he has not and cannot show a right not to be transferred.  Property interests are created and defined by "reference" to state law, *Bishop v. Wood*, 426 U.S. 341, 344 & n. 7, 96 S.Ct. 2074, 2077 & n. 7, 48 L.Ed.2d 684 (1976).  Alabama law on transfers for merit system employees does not evidence a property entitlement protected by the due process clause.  Section 36–26–24 of the 1975 Code of Alabama allows merit system employees to be transferred "at any time."  The section provides that,

> "An appointing authority may, at any time, assign a classified employee under his jurisdiction from one position to another in the same class.  Any classified employee may be transferred from one department to another in the same class;  provided, that the director shall have authorized the transfer and shall have received the approval of both appointing authorities concerned.  In every case involving transfer, the appointing authority shall submit a written request to the director."

Brogdon has not claimed that his transfer resulted in being assigned to a lower class within the merit system, except to call the transfer a "constructive demotion."  There is, however, no evidence to support a constructive demotion either.  In *Sullivan v. Teague*, 424 So.2d 574 (Ala.1982), the Alabama Supreme Court held that § 36–26–24 permits an appointing authority to transfer employees to "comparable" classes.  The court wrote that restricting the definition of the term "same class" to mean "identical class" "would serve to retard the purpose and spirit of the Merit System Act—that of fostering efficiency within the state personnel system, while attracting officers and employees of a high character and quality."  *Id.* at 577.  Brogdon's transfer did not fall out-side the reach of § 36–26–24 as refined by the Alabama Supreme Court.

Brogdon's claim that he suffered a loss of reputation does not survive either.  In response to a similar argument by the plaintiffs in *Maples* that they suffered "reputational loss" as a result of their transfers, the court stated, "Presumably, they mean to suggest that they have been deprived of a constitutionally protected liberty interest."  *Maples*, 858 F.2d at 1550 n. 5.  However, the court continued, "they have not demonstrated that their transfers were 'attended by stigmatizing changes which "might seriously damage [their] standing and association with [their] community" or foreclose "[their] freedom to take advantage of other employment opportunities."'  *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1187 (11th Cir.1985) (citation omitted)."  *Id.*  Similarly, Brogdon has not demonstrated that his transfer will either stigmatize him in such a way that his standing in the community will be seriously damaged or that his freedom to take advantage of other employment opportunities will be foreclosed.[6]

In conclusion, Brogdon's due process claim is meritless.[7]

### E.  *Brogdon's State Law Claims*

#### i.  Intentional Infliction of Emotional Distress

To recover under the tort of outrage or intentional infliction of emotional distress, a plaintiff "must demonstrate that the defendant's conduct (1) was intentional and reckless;  (2) was extreme and outrageous;  and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  *Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38, 44 (Ala.1990).  The elements of the tort are met only in rare circumstances:  "the conduct complained of must be so extreme in degree as to go be-

---

4.  Plaintiff's brief filed on May 31, 1994, at 8.

5.  *Id.*

6.  All defendants, except ADECA, contend that they are entitled to "qualified immunity" to the extent they have been sued in their individual capacities for violating federal law.  However, because they are otherwise entitled to dismissal in their individual capacities, this issue is moot.

7.  In his complaint, Brogdon also relies on 42 U.S.C.A. §§ 1985 and 1988.  Because he has not since mentioned these provisions, the court assumes that he is on longer relying on them.

yond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

■ Here, the court must conclude, as a matter of law, that the circumstances were not so extreme as to constitute the tort of outrage under Alabama law. Even assuming for the sake of argument that defendants' conduct was intentional, it did not "go beyond all possible bounds of decency" as to be regarded as "atrocious and utterly intolerable in a civilized society." Although Brogdon may have been transferred to a less desirable position, he has been maintained within the state merit system. Admittedly, Brogdon states that,

> "After the transfer, I was a laughing stock with many of my former newspaper friends.... I had great difficulty sleeping for several months after the transfer and it has actually caused me to suffer enhanced stress physically which has exacerbated my health problems, including my heart condition.... The transfer was a big blow to me emotionally." [8]

These facts, however, do not support a finding of outrageous conduct as a matter of law.

### ii. Breach of Covenant of Good Faith and Fair Dealing

Brogdon concedes that there is no covenant of good faith and fair dealing presented by this lawsuit.[9] This claim will therefore be dismissed.

### iii. Misclassification of Plaintiff within State Merit System

Again, Brogdon concedes that his claim for misclassification is meritless. It is unclear, however, to the court whether Brogdon is conceding the defendants' argument that, as a matter of law, they are not responsible for his alleged misclassification or to their argument that any claim concerning such misclassification would be barred by the statute of limitations. In any event, because Brogdon

agrees to the dismissal of this claim, the court will dismiss it.[10]

Accordingly, for the above reasons, it is ORDERED that the motion to dismiss or, alternatively, for summary judgment filed by the defendants on April 11, 1994, is granted to the following extent:

(1) That said motion is denied as to plaintiff Neal Stanley Brogdon's claim under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. §§ 621 to 634, against defendants Alabama Department of Economic and Community Affairs and David Hooks, in his official capacity, and is granted as to plaintiff Brogdon's remaining claims and that said remaining claims are dismissed; and

(2) That all defendants, except the Alabama Department of Economic and Community Affairs and David Hooks, in his official capacity, are dismissed.

DONE, this the 26th day of September, 1994.

---

8. Plaintiff's brief filed on May 31, 1994, exhibit B.

9. Plaintiff's brief filed on May 31, 1994, at 10.

10. In his complaint, Brogdon also relies on Article I, §§ 1, 4, 6 and 22 of the Constitution of Alabama of 1901. Because he has not since mentioned these provisions, the court assumes that he is on longer relying on them.