SCHAEFER et al., Plaintiffs,

v.

TANNIAN et al., Defendants.

Civ. A. No. 39943.

United States District Court,
E. D. Michigan, S. D.

May 22, 1974.

See also, D.C., 394 F.Supp. 1136.

Lutz Alexander Prager, Wayne State
University Law School, Detroit, Mich.,

Paulette LeBost, Jobes, LeBost & Farrior, P.C., Detroit, Mich., for plaintiffs.

Thomas H. Gallagher, Asst. Corp. Counsel, Detroit, Mich., for defendants.

### MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This is a class action suit. According to the complaint, plaintiffs represent a class of all women who have been employed, are employed, might be employed or are applicants for employment with the Detroit Police Department (DPD). Defendants are the principal officials charged with the operation of the DPD and with responsibility for its hiring and assignment practices. The complaint charges defendants with discrimination on the basis of sex in recruiting, examining, hiring, promoting, and compensating employees and potential employees of the DPD. Plaintiffs seek relief under 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

This case is presently before the court on plaintiffs' motion for partial summary judgment and for a preliminary injunction. In this motion, plaintiffs ask the court to hold, on the basis of undisputed facts, that part of the class that plaintiffs represent has been and is being discriminated against with respect to both hiring and initial assignment in the DPD. Plaintiffs also urge the court to grant a preliminary injunction designed to correct or improve the hiring and assignment practices complained of.

The facts plaintiffs rely on in support of their motion are as follows. In answering #20 of "Plaintiffs' Interrogatories" (1st set), defendants admit that there are no duties which male police officers perform which the DPD believes female officers would be unable to perform. Female officers are not restricted from working any shifts, (according to defendants' Answer to Interrogatory #62, 1st set); they are used for occasional decoy missions (Int. #63, 1st set); and they are required, as are male officers, to qualify bi-annually with their revolvers (Int. #19, 1st set).

Plaintiffs, in their motion, cite census figures compiled by the Michigan Employment Security Commission showing that in 1973 women in the Detroit Metropolitan Area constituted 52.1% of the general population and 39.7% of the work force. This statistical data is not contested by defendants. In response to plaintiffs' Interrogatory #1 (1st set), defendants have compiled statistics showing the number of male and female police officers employed by the DPD at the beginning of each year from 1963–1974. These statistics show that the percentage of women officers in the DPD varied from a low of 1.56% in 1972 to a high of 2.15% in 1974.

Plaintiffs say that the statistical disparity between the percentage of male officers and female officers results from the following practices:

(1) Separate eligibility lists are maintained for male applicants and female applicants for employment in the DPD and will be maintained until July 1974. (Int. #40, 2nd set).

(2) Before 1974, the DPD's minimum entrance requirements were more stringent for female than for male applicants. Females were required to be 21 years of age and have two years of college, while males were required to be 18 and high school graduates or equivalent. (Int. ##28, 29, 1st set); the two years of college required for women has never been validated as being job related for each position within the DPD. (Int. #35, 2nd set). This education requirement is no longer required for male or female officers (Int. #35, 2nd set).

(3) Written entrance examinations for women are administered only once a year (Int. #37(e), 1st set), while male applicants are tested weekly (Int. #36 (e), 1st set). While the DPD is still administering weekly written examinations for male applicants (Affidavit of Van Suilichem), female applicants are being informed by the DPD personnel that written examinations will not be

administered to women until some time later this year. (Affidavits of Reid, Siegel and Kuharsky).

(4) In answering paragraph 17 of the complaint, defendants admit that *past practice* has been to maintain and apply separate minimum entrance requirements and placement tests for female applicants to the DPD which are unequal to those for male applicants; defendants further admit to the past practice of limiting the number of female police officers in the DPD to a quota substantially smaller than the number of male officers hired. (Answer to Complaint, ¶ 17(c)). Up to 1970 female police officers were not utilized in divisions other than the Women's and Children's Section (Int. #29, 2nd set). Hence, the size of the Women's Division has been determinative of the number of women in the entire DPD (Int. #48, 1st set). Another way in which the number of police women was limited was by budgetary provision. (Dep. of Chief Sienski, p. 20).

(5) The policy of the DPD in past years has been to exclude female officers from the entry position of patrolman (Int. #12, 2nd set), though this policy has been changed according to defendants' answer to that interrogatory. In January of 1974, approximately 39 women graduated from the Criminal Justice Institute of the DPD, "the greatest majority" of whom (if not all) were assigned to the Youth Services Bureau. (Dep. of Sienski, p. 23). (According to the motion, the Youth Services Bureau was created in 1973 when the DPD divided the Women's Division into the Women's and Children's Service Section and the Youth Services Bureau.)

Plaintiffs' motion states that the effect of the DPD's discriminatory policies and practices is to enable male applicants to be hired into the DPD much more quickly than female applicants and in much greater numbers. The motion urges that:

"inasmuch as the existence of the practices described above is undisputed, and undisputable; inasmuch as defendants admit that women are capable of performing the duties of all positions in the Detroit Police Department; and inasmuch as the described practices are unlawfully discriminatory, partial summary judgment lies with respect to the Detroit Police Department's hiring practices and its initial assignment of female police officers."

Defendants have responded to plaintiffs' motions by filing what is entitled "Motion in Opposition to Plaintiffs' Request for Partial Summary Judgment and Injunctive Relief." With respect to the motion for summary judgment, defendants say that there are questions of fact in dispute, and they seem to assert that admissions and answers to interrogatories are not a proper basis for summary judgment. Defendants further urge that the two-year college requirement is a moot question; an unsworn affidavit is submitted saying that this requirement for female applicants was dropped as of January 1973.

With respect to the Police Department's delay or failure to test female applicants, defendants refer to an Agreement between the Department and the Michigan Civil Rights Commission. In this agreement, dated July 3, 1973, the DPD agrees, on or before July 1, 1974, to the following:

First, it will establish a single entry level classification of police officer open to all applicants without regard to sex.

Second, it will continue in the meantime its practice of hiring patrolmen and police women from separate eligibility lists as the need and vacancies arise. These eligibility lists will be integrated into a single list to take effect on July 1, 1974.

Third, six months prior to July 1, 1974, the DPD will begin to accept employment applications without regard to sex and to compile a sexually integrated eligibility list to be implemented on or before July 1, 1974.

Fourth, all written examinations for the single entry level position of police officer are to be validated. No selection criteria, including those relating to physical abilities and characteristics, are to be implemented which are likely to have a disparate effect on women.

Defendants ascribe the delay in testing female applicants to this agreement and to the validation of a new entrance examination which is required thereunder. They assert that an affirmative program of equalizing male and female officers is now being implemented.

Respecting injunctive relief sought by plaintiffs, defendants say that a balancing of the equities in this case militates in their favor.

■ Before dealing with the merits of plaintiffs' motion, the court feels it desirable to clear up a certain misapprehension apparent in defendants' motion in opposition on their memorandum of law. Defendants seem to feel that answers to interrogatories may not properly be considered in a motion for summary judgment under Rule 56. They cite Town of River Junction v. Maryland Casualty Co., 110 F.2d 278, a Fifth Circuit case decided in 1940 for this proposition. While this case supports defendants, it has been repudiated by subsequent cases, and in 1963, Rule 56 (c) was amended to add "answers to interrogatories" to materials that may be considered on a motion for summary judgment. Rule 56(c) presently reads in part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, *answers to interrogatories*, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the proving party is entitled to a judgment as a matter of law."

■ 42 U.S.C. § 2000e–2(a) provides that "It shall be an unlawful employment practice for an employer—

(1) *to fail to refuse to hire* . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . : or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . .

The term "employer" is defined at 42 U.S.C. § 2000e(b) as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person* . . ." (emphasis added) The term "person" is defined at § 2000e (a) as "one or more individuals, governments, governmental agencies, political subdivisions . . ." Presumably, defendants in the present case could be deemed agents of the City of Detroit or of the DPD and hence come within the definition of 'employer'.

The facts presented by plaintiffs constitute impressive evidence that the DPD limits, segregates, and classifies women employees and applicants for employment in a way which would both deprive them of employment opportunities and otherwise adversely affect their status as employees because of their sex.

■ In Title VII actions, statistical information has been recognized as an acceptable method for determining the existence of racially prejudicial employment practices. Mabin v. Lear Siegler, Inc., 457 F.2d 806 (6 Cir. 1972); Stamps v. Detroit Edison Co., 365 F.Supp. 87 (E.D.Mich.1973). As stated in the *Stamps* case, at 109, "There is virtual unanimity on the proposition that the statistical absence of blacks disproportionate to whites makes out a Title VII . . . violation." There is no reason that statistical information is not also probative in cases of alleged sex discrimination in violation of Title VII.

In the present case, statistics provided by defendants indicate that in 1974, women make up only 2.15% of the police officers employed by the DPD. This constitutes an extreme disparity between the number of male and female officers, especially if plaintiffs' figures are correct that women constitute 39.7% of the work force in the Detroit Metropolitan Area. Smaller disparities than this, in racial discrimination cases, have been held to prove not only a prima facie case but an outright violation of Title VII's prohibition against discriminatory hiring. See Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8 Cir. 1970).

■ Assuming such statistics show only a prima facie violation in the present case, they are bolstered by defendants' admission that the past practice of the DPD was to limit the number of female officers to a quota substantially smaller than the number of male officers hired. It is also undisputed that while male applicants are given the written entrance examination weekly, female applicants are given the test on a yearly basis. Their test has not been administered for some time, and defendants do not intend to administer any tests to women before July 1 of this year. Meanwhile, presumably, male applicants who pass their examinations and are hired acquire seniority while women applicants can only wait until July 1. The statistics and practices outlined above establish a strong prima facie case that defendants have acted to limit, segregate, and classify female candidates for employment so as to deprive them of employment opportunities because of their sex in violation of 42 U.S.C. § 2000e–2 (a)(2)

■ It also appears from the materials plaintiffs have submitted that new policewomen hired by the Department have in the past been assigned to and are still being predominantly assigned to the Women's Division, or as now reorganized, the Women's and Children's Service Section and the Youth Services Bureau. This appears to be a limitation, segregation, or classification of women employees so as to deprive them of employment opportunities because of their sex in violation of § 2000e–2(a)(2).

■■ As plaintiffs have established at least a prima facie violation of § 2000e–2(a)(2) by defendants respecting their hiring and initial assignment practices, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason underlying these practices. See Wetzel v. Liberty Mutual Ins. Co., 372 F.Supp 1146 (W.D.Pa. 1974), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In their memorandum of law, defendants argue that the past quota as to women was necessitated by past practices now being revised according to present day thinking. They urge that the practice was necessary for the safety of the woman and the efficient operation of the business of the police department. Defendants rely on the "business necessity" test articulated in Robinson v. Lorillard Co., 444 F.2d 791 (4 Cir. 1971) at 798. Business necessity is one of the principal defenses available to an employer who discriminates. As articulated in *Robinson,* supra, a race discrimination case, the test is:

> Whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business. Thus, the business purpose must be sufficiently compelling to override any racial impact; the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential racial impact.

■ Defendants, beyond argument and assertion in their "Memorandum of Law", provide no facts to support a conclusion that their discriminatory prac-

tices are or have been in the past necessary to the safe and efficient operation of the Department. Defendants have certainly not met the burden of showing business necessity. Moreover, at the hearing on these motions, counsel for defendants agreed that partial summary judgment would be proper in this case.

On the basis of the undisputed facts, this court holds that defendants have violated 42 U.S.C. § 2000e–2(a) (2) by discriminating against women applicants in the past and present in the following particulars:

(a) giving written entrance examinations to men more frequently than to women applicants;

(b) having until recently a quota limiting policewomen to a very small percentage of the police employees of the Department;

(c) restricting new policewomen employees almost solely to positions in the Women's Division or its successor divisions.

The Fourteenth Amendment Equal Protection Clause, as enforced by 42 U.S.C. § 1983, also forbids discrimination in employment on the basis of sex by state or local governments. Such discrimination is impermissible unless it bears a rational relationship to a legitimate state interest or objective. Aside from urging that the past quota as to women "was necessary for the safety of the woman and the efficient operation of the business of operating the police department," defendants have not asserted any state interests or objectives to justify their discriminatory practices. Administrative convenience is not an acceptable justification for sex discrimination. See Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) and Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). And the unsupported suggestion that the discrimination is or was for the safety of the woman, without any facts to back up this claim, does not show any rational relation between any discriminatory hiring or assignment practices and a legitimate state objective. See Smith v. City of East Cleveland, 363 F.Supp. 1131 (N.D.Ohio, 1973). Therefore, this court holds defendants' discriminatory practices to be in violation of the Equal Protection Clause of the Fourteenth Amendment as enforced by § 1983.

For the above reasons, plaintiffs' motion for partial summary judgment shall be granted.

## RELIEF

Plaintiffs seek a preliminary injunction under Rule 65. In deciding a motion for a preliminary injunction, the court is guided by ordinary principles of equity. The criteria to be applied are as follows. First, the plaintiffs must show a reasonable probability of success at a trial on the merits; second, the injury of which plaintiffs complain must be impending and, if consummated, must be irreparable in nature; and, finally, the court must weigh the equities involved and determine whether the opposing party would suffer more from the granting of the injunction than the moving party would suffer from denial.

In the present case, the court has granted summary judgment in favor of plaintiffs as set forth above. Hence, the requirement of probability of success on the merits is met. Furthermore, the injury of which plaintiffs complain is impending and is irreparable in nature. Defendants continue to discriminate in administering entrance exams to applicants and in their initial assignment of female employees. If males are allowed to take tests while females are not, then males can be hired more rapidly and get seniority rights and positions in preference over equally available and able females. The women assigned to the Women's and Children's Service Section or the Youth Services Bureau are being denied opportunities in other areas of the Department. The injury of which plaintiffs complain here is impending and irreparable in nature.

The court, in considering the equities of this case, recognizes that the Police Department is making good faith efforts to comply with the MCRC agreement and to have a validated uni-sex examination and an integrated, non-discriminatory eligibility list in force after July 1, 1974. However, the court believes that defendants' continued discrimination against women is a serious violation of their rights and that the injunctive relief it will grant will not cause defendants serious hardship.

■ Therefore, a preliminary injunction shall issue, the terms of which are as follows:

1. Defendants shall not allow the Detroit Police Department to administer written entrance examinations to men only, but shall administer all future written entrance examinations equally to all men and women applicants.

2. No later than June 1, 1974, Defendants shall cause the Detroit Police Department to administer an entrance examination to all women applicants whose applications for admission to the Detroit Police Department have heretofore been filed and who have not been previously allowed to take any entrance examination. The examination to be given by June 1, 1974, shall be substantially equivalent to examinations administered to male applicants in recent months. If any female takes but does not pass the examination, she will not be prevented from taking a validated examination when such examination has been prepared and is available. If any female who is notified of the examination to be given by June 1, 1974 in turn notifies the Detroit Police Department prior to June 1, 1974, that she will be unable to be present at the administration of such examination, Defendants will cause the Detroit Police Department to administer a substantially equivalent examination to all such persons upon at least 10 days notice and no later than June 22, 1974.

3. No later than 10 days prior to administration of the examination ordered to be given in paragraph 2 above, Defendants will cause the Detroit Police Department to give written notice by certified mail to all women eligible to take such examination of the date, place and time of such examination. Such notice shall have appended a copy of this Preliminary Injunction.

4. Defendants will expedite the oral interview and investigation of all female applicants who successfully pass the examination required to be given by paragraph 2 above.

5. Beginning one month from the date of the entrance examination required to be given by paragraph 2 above, Defendants shall cause the Detroit Police Department to hire at least one qualified female for each male hired into the Department until further order of the Court, or until the issuance of a permanent injunction herein, or until the list of eligible female applicants who have applied to the Detroit Police Department prior to the date of this injunction is exhausted.

6. Defendant shall cause the Detroit Police Department to assign all persons who henceforth complete training at the Criminal Justice Institute to divisions of the Department on a unisex basis, that is, without regard to sex *per se.*

7. Defendants shall cause the Detroit Police Department to begin immediately the use of recruiting material which stresses the equal role of men and women in the Detroit Police Department.

8. Defendants shall forthwith inform the public with a press release distributed to all news media of the contents of this injunction and shall further inform the public that the Department will henceforth hire police officers without regard to their sex.