**Grace SCHAEFER, et al., Plaintiffs,**

v.

**Philip G. TANNIAN, et al., Defendants.**

**No. 73–39943.**

United States District Court,
E.D. Michigan, S.D.

May 7, 1991.

John R. Runyan Jr., Sachs Nunn, Lucia H. Simpson, Detroit, Mich., for plaintiffs.

Nancy J. Van Lopik, Grosse Pointe Park, Mich., for defendants.

MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MARCH 12, 1990 MOTION FOR ORDER AWARDING BACK PAY AND RETROACTIVE SERVICE CREDIT FOR PURPOSES OF PENSION/RETIREMENT

GADOLA, District Judge.

INTRODUCTION AND BACKGROUND

Prior to the initiation of this suit, women working for the Detroit Police Department were consigned only to the women's division, a separate unit of the Detroit Police Department. There they investigated crimes against women and children: rape, abuse, etc. The work they did was similar to the work done by male officers of the detective rank. However, detectives were paid about $1,000 a year more than women officers. Women were denied the opportunity to sit for the detectives' exam. The exam could be taken only by men. On April 10, 1973 Grace Schaefer brought this suit for redress of the discrimination suffered by women police officers.

FACTS

The complaint in this action was filed on April 10, 1973. In a memorandum opinion dated May 22, 1974 (exhibit A to plaintiffs' motion), United States District Judge Ralph Freeman, the court's predecessor, found, on the basis of the undisputed facts, that Philip G. Tannian, Coleman A. Young and Richard Caretti (hereinafter "City Defendants") had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(2) and the Equal Protection Clause of the Fourteenth Amendment by

discriminating against women applicants on the basis of sex as follows:

"(a) giving written entrance examinations to men more frequently than to women applicants;

(b) having until recently a quota limiting policewomen to a very small percentage of the police employees of the Department;

(c) restricting new policewomen employees almost solely to positions in the Women's Division or its successor divisions."

*Schaefer v. Tannian,* 394 F.Supp. 1128, 1135 (E.D.Mich.1974). In his subsequent order of partial summary judgment dated June 18, 1974 (exhibit C to plaintiffs' motion), Judge Freeman also found that the Detroit Police Department (the "Department") had been and was discriminating on the basis of sex by maintaining and applying separate and unequal entrance requirements, placement tests and eligibility lists for male and female applicants, *see,* order of partial summary judgment dated June 18, 1975 at paragraphs 4 and 8 (exhibit C to plaintiffs' motion), and by excluding female officers from the entry level position of patrolman, *see,* order of partial summary judgment dated June 18, 1975 at paragraph 12 (exhibit C to plaintiffs' motion). Indeed, Judge Freeman found that until 1974 female applicants were required to be twenty-one years of age and have two years of college, while male applicants were only required to be eighteen and high school graduates or equivalent, *see,* order of partial summary judgment dated June 18, 1975 at paragraph 6 (exhibit C to plaintiffs' motion).

On May 13, 1974, Judge Freeman entered a preliminary injunction prohibiting many of the discriminatory hiring and assignment practices discussed above and requiring the Department to hire one qualified woman applicant for each male hired until the list of eligible female applicants prior to the date of the injunction was exhausted (exhibit B to plaintiff's motion). On May 12, 1975, Judge Freeman issued a preliminary injunction enjoining the layoff of any woman officer hired pursuant to his May 13, 1974 order.

The Detroit Police Officer's Association, which had been added as a necessary party, appealed from the Judge Freeman's May 12, 1975 order. In a per curiam opinion issued on June 25, 1976 (exhibit D to plaintiff's motion), the U.S. Court of Appeals for the Sixth Circuit remanded the matter to Judge Freeman for additional hearings and decisions, which appeared to be required under *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). *Schaefer v. Tannian,* 538 F.2d 1234, 1236 (6th Cir.1976).

Upon remand from the Court of Appeals, Judge Freeman issued his August 27 and September 17, 1976 memorandum opinions and orders (exhibits E and F to plaintiffs' motion), which *inter alia* awarded retroactive seniority for purposes of layoff and recall to "all identifiable female victims of [defendant's] illegal hiring discrimination, dating back to the date of their first written application which would have been accepted by the Police Department had the applicant been male." Memorandum opinion and order, dated September 17, 1976 at paragraph 1 (exhibit F to plaintiff's motion). Between July 23, 1980 and December 5, 1985, Special Master George T. Roumell, Jr., heard claims for seniority relief from 487 class members whose seniority was not voluntarily adjusted in accordance with the Judge Freeman's order. By memorandum opinions dated May 8, 1986 and August 26, 1987, and an order dated September 11, 1987 (exhibits I, J and K to plaintiffs' motion), Judge Freeman ruled upon plaintiffs' several applications for orders adopting the Special Master's twenty-four reports and recommendations upon such claims, as well as the respective objections of the parties to the reports and recommendations.

In the interim, Judge Freeman ruled by memorandum opinions and orders dated August 4, 1978 and March 20, 1979, that while the plaintiffs are entitled to retroactive seniority *"for all purposes for which such seniority or length of service is currently used* in determining a police officer's entitlement to competitive and non-

competitive benefits," the implementation of seniority relief for purposes other than layoff and recall would not be ordered "until such time as a final award of seniority has been made to each class member and the court has had the opportunity in further proceedings to determine the effect that implementation of such relief will have on the non-victim employees of the police force." *Schaefer v. Tannian,* 17 EPD 8642, pp. 7271–72 (E.D.Mich.1978).

Plaintiffs then moved, on May 26, 1988, for an order implementing the seniority relief for purposes of layoff and recall. City defendants never responded to this motion. Instead, after the matter had twice been scheduled for oral argument, the City defendants decided not to oppose the motion, provided the issue of back pay and pension service credit was reserved for later determination. *See,* order dated October 18, 1988 (exhibit L to plaintiffs' motion). This court is now asked to decide the issues of back pay and pension service credit with respect to those members of plaintiff class who were subject to hiring discrimination after April 10, 1970. Although all members of plaintiff class were potentially subject to hiring discrimination, it has already been determined that the potential hiring discrimination claims of members of plaintiff class hired before April 10, 1970 are barred by the statute of limitations. Thus, members of plaintiff class hired before April 10, 1970 are limited to claims of promotional discrimination.

## ANALYSIS

For a number of reasons this litigation has proceeded in a piecemeal fashion for over seventeen years. The current motion before the court is limited to those members of the plaintiff class who were subject to hiring discrimination after April 10, 1970. The motion asks for relief of two sorts. First, the motion seeks an order awarding back pay. Second, the motion seeks an order awarding retroactive service credit for purposes of pension and retirement. With respect to the retroactive service credit, the relief impacts only that part of the plaintiff class bringing the motion. Accordingly, the court will make disposi-

tion as to that part of the motion. However, the award of back pay impacts both parts of the plaintiff class, i.e., those hired after April 10, 1970 (the moving parties) and those hired before April 10, 1970.

Because the back pay issue impacts both parts of the plaintiff class, this court will not proceed with the disposition of that part of the motion until it has received from the plaintiffs' counsel a motion seeking back pay for members of the plaintiff class who were hired prior to April 10, 1970 or a stipulation that they will not seek such relief. Further, if members of the class hired before April 10, 1970 do intend to seek back pay, a claims procedure shall be instituted to determine the quantity and quality of claims that will be made by those members of the class hired before April 10, 1970. Upon receipt of the motion and claims information or upon receipt of the stipulation, the court will then consider the issue of back pay for all those members of the class who are seeking back pay.

### A. Retroactive Service Credit

As noted above, in Judge Freeman's memorandum opinion of August 4, 1978, he ruled in part that "retroactive seniority is to be awarded for *all purposes* for which such seniority or length of service is currently used in determining a police officer's entitlement to competitive and noncompetitive benefits...." *Schaefer v. Tannian,* 17 EPD 8642, p. 7272 (emphasis supplied). Because the motion before this court is based to such a large extent on the August 4, 1978 memorandum opinion in this matter, the relevant section of that opinion will be reproduced, in its entirety, below:

I. The Scope of Retroactive Seniority

Although the Court's opinion regarding the award of retroactive seniority was not limited in any respect, the order issued pursuant to that opinion only required that the Police Department realign its seniority list to provide the plaintiffs with seniority status for purposes of layoff and recall. The plaintiff has now requested that the Court broaden the scope of its earlier holding to include an

award of retroactive seniority for all purposes.

There is no question that an award of seniority for all purposes is an available remedy in all cases. In *Franks v. Bowman Transportation Co.*, 424 U.S. 747 [96 S.Ct. 1251, 47 L.Ed.2d 444] (1976), the Supreme Court held that "class-based seniority relief for identifiable victims of illegal hiring discrimination is a form of relief generally appropriate" under Title VII. That such relief may include an award of seniority for all purposes is also undisputed. As the Supreme Court pointed out in *Franks, supra*,

> Seniority principles are increasingly used to allocate entitlements to scarce benefits among competing employees ... and to compute noncompetitive benefits earned under the contract of employment.... Included among the benefits, options, and safeguards affected by competitive status seniority are not only promotion and layoff but also transfer, demotion, rest days, shift assignments, [prerogative] in scheduling vacation, ... training opportunities ... work conditions ... *Id.* at 766–67 [96 S.Ct. at 1265].

It is clear, therefore, that the *Franks* court considered full retroactive seniority to be an appropriate remedy under Title VII. Indeed, the Court went so far as to conclude that the District Court "should take as [its] starting point the presumption in favor of rightful-place seniority relief." *Id.* at n. 41.

The defendants contend that such a broad award of seniority is inappropriate in this case. They, in essence, argue that the Court has a great deal of discretion in awarding retroactive seniority and need not award all of the relief noted in *Franks*. While it is true that *Franks* did recognize that the relief awarded under Title VII is within the equitable and discretionary powers of the district court the leeway granted the Court in such a case is not broad. As the Court stated in *Franks*, supra:

> *Albemarle Paper, supra*, [422 U.S.] at 416 made clear that discretion imports not the court's " 'inclination, but ... its principles.' " Discretion is vested not for purposes of "[limiting] appellate review of trial courts, or ... [inviting] inconsistency and caprice," but rather to allow the most complete achievement of the objectives of Title VII that is attainable under the facts and circumstances of the specific case. 422 U.S. at 421 [95 S.Ct. at 2373]. Accordingly, the District Court's denial of any form of seniority remedy must be reviewed in terms of its effect on the attainment of the Act's objectives under the circumstances presented by this record. No less than with the denial of the remedy of backpay the denial of seniority relief to victims of illegal racial discrimination in hiring is permissible "only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Ibid. Franks* [424 U.S.] at 769–770 [96 S.Ct. at 1266–67]. (Emphasis added)

> ·     ·     · ·     ·     ·

> Circumstances peculiar to the individual case may of course justify the modification or withholding of seniority relief for reasons that would not if applied generally undermine the purposes of Title VII. *Id.* at 779 [96 S.Ct. at 1271].

Here the Court is of the opinion that a failure to grant the requested relief would clearly undermine the ."make-whole" purposes of Title VII. To deny the plaintiffs retroactive seniority for all purposes would clearly fail to remove the effects of discrimination and would not restore the plaintiffs to "a position where they would have been were it not for the unlawful discrimination." Section-by-Section Analysis of· H.R. 1746, accompanying the Equal Employment Opportunity Act of 1972–Conference Report, 118 Cong.Rec. 7166, 7168 (1972).

The defendants go on to argue that an award of competitive seniority[1] for all purposes would be inequitable because it

would disadvantage males with established seniority rights. The defendants point out that such an award could lead to a situation where a woman with little experience could sit for a sergeant's exam or could by the assertion of her seniority rights cause the demotion of an established male officer. While the thought of such occurrences is indeed distressing, the Supreme Court effectively disposed of this argument in *Franks*, stating:

1 "Competitive seniority" refers to the use of earned credits in determining an employee's right relative to other workers to job related rights that cannot be supplied equally to two employees and is distinguished from benefit "seniority" which determines an employee's level of fringe benefits. Franks, supra (Powell, J. concurring and dissenting).

[It] is apparent that denial of seniority relief to identifiable victims of ... discrimination on the sole ground that such relief diminishes the expectations of other, arguably innocent, employees would if applied generally frustrate the central "make whole" objectives of Title VII.... Accordingly, we find untenable the conclusion that this form of relief may be denied merely because the interests of other employees may thereby be affected. *Id.* at 774–75 [96 S.Ct. at 1269].

Any doubt as to the Court's holding is removed by reference to the following language:

[Seniority] relief may not be denied on the abstract basis of adverse impact upon interests of other employees but rather only on the basis of unusual adverse impact arising from facts and circumstances that would not be generally found in Title VII cases. *Id.* at n. 41.

Here the defendant has failed to establish that any unusual adverse impact would occur in this case that would not generally occur in Title VII cases. Accordingly, the Court holds that the plaintiffs are entitled to retroactive seniority for all purposes for which such seniority is used in determining a police officer's entitlement to competitive and non-competitive benefits.

Although the decision in *Franks* compels a grant of retroactive competitive seniority in this case, the Court is not without power to ameliorate the adverse and possibly inequitable effects of granting retroactive competitive seniority to all members of the class. In *Teamsters v. United States* [431 U.S. 324], 97 S.Ct. 1843 [52 L.Ed.2d 396] (1977), the Court upheld a lower Court ruling that the defendant had discriminated on the basis of race in hiring line drivers. Essentially, the Government's case showed that the defendant had hired members of the discriminatee class to fill lower paying jobs and had failed to hire them for the more desirable job of line driver. Although the Court limited the lower Court's award of retroactive seniority to the effective date of Title VII it did not disturb the finding that retroactive seniority was an appropriate remedy for certain members of the class.

The method with which the remedy was to be imposed, however, caused the Court problems. The District Court had held that members of the discriminatee class were to be offered the opportunity to fill line driver jobs, but this right was subject to the recall rights of laid-off line drivers. The Court of Appeals, however, held that this remedy was inadequate and ordered that class members be allowed to compete for vacancies with laid-off employees on the basis of the class members' retroactive seniority. Although the Supreme Court refused to side with either the District Court or the Court of Appeals, it indicated that the decision was one to be controlled by equitable principles.

Although not directly controlled by the Act, the extent to which the legitimate expectations of non-victim employees should determine when victims are restored to their rightful place is limited by basic principles of equity. In divising and implementing remedies under Title VII, no less than in formulating any equitable decree, a court must draw on the "qualities of mercy and practicality [that] have made equi-

ty the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Hecht Co. v. Bowles*, 321 U.S. 321, 329–330, 64 S.Ct. 587, 592, 88 L.Ed. 754 [(1944)]. *Cf. Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 195–196, 61 S.Ct. 845, 852–853, 85 L.Ed. 1271 [(1941)], modifying and remanding *In re Phelps Dodge Corp.*, 19 N.L.R.B. 547, 600; *Franks*, supra, 424 U.S. at 798–799, 96 S.Ct. at 1280–1281. Especially when immediate implementation of an equitable remedy threatens to impinge upon the expectations of innocent parties, the courts must "look to the practical realities and necessities inescapably involved in reconciling competing interests," in order to determine the "special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200, 201, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (opinion of Burger, C.J.) *Id.* [97 S.Ct.] at 1874–75.

The Court went on to state:

> Until ... both the number of identifiable victims and the consequent extent of necessary relief have been determined it is not possible to evaluate abstract claims concerning the equitable balance that should be struck between the statutory rights of victims and the contractual rights of nonvictim employees. That determination is at best left, in the first instance, to the sound discretion of the trial court. *Id.* [97 S.Ct.] at 1875.

Due to the fact that the amount of seniority due to each class member has not been determined, this Court finds itself in a similar dilemma. It is impossible at this point to determine exactly what effect an immediate implementation of the award of retroactive competitive seniority would have on the rights of male policemen. Accordingly, the Court will not order the implementation of equitable relief with respect to competitive seniority until such time as a final award of seniority has been made to each class member and the Court has had the opportunity in further proceedings to determine the effect that the implementation of such relief will have on the nonvictim employees of the police force.[2] These further proceedings will necessarily consider such factors as the number of nonvictim employees affected, the alternative available to them and the economic characteristics of the industry. *Teamsters, supra* at n. 62.

---

[2] This holding in no way abrogates the Court's earlier award of retroactive seniority for layoff and recall purposes nor does it permit any delay in the award of benefit seniority to any member of the discriminatee class once a final award of seniority is made.

The Court feels that it is important to reiterate that this decision is not a denial of retroactive competitive seniority to members of the discriminatee class. To the contrary, the Court holds that such an award is appropriate in this case. The Court's only concern is that actual implementation of this remedy proceed so that the "make whole" purposes of the Act are fulfilled in such a way that the adverse effects on nonvictims is minimized. Clearly, the only way in which these dual goals can be accomplished is by a balancing of the rights of the discriminatees against the impact that the exercise of these rights will have on nonvictims. Therefore, until the exact amount of seniority to be awarded each class member is determined and the parties have had an opportunity to present their positions regarding the relative hardships imposed on victims and nonvictims, the Court will withhold its decision regarding the manner and time in which the award of retroactive competitive seniority will be implemented.

Finally, the defendant points out that all of the seniority benefits referred to in Franks are not available under the DPOA contract and asks that the Court limit its award of retroactive seniority to those seniority rights specified in the contract. It goes without saying that the Court's award of retroactive seniority in this case is limited to those rights and benefits which generally accrue to a police officer with seniority. If seniority

rights in certain areas are not available to policemen, as a whole, an award of such rights would clearly be outside the scope of Title VII, since the plaintiffs would not now enjoy such rights even had they not been the victims of discrimination. The Court, however, will not limit the award to just those rights mentioned in the DPOA contract. It is clear that all of the rights which accrue to a policeman with seniority are not set forth in this contract. For example, the defendants' brief refers to various seniority requirements for taking the sergeants' exam. While it is clear that this is a benefit which accrues only to an officer with seniority, no mention of the right to take the exam is made in the contract. Accordingly, the Court holds that retroactive seniority is to be awarded for all purposes for which such seniority or length of service is currently used in determining a police officer's entitlement to competitive and noncompetitive benefits and not just those purposes set forth in the contract.

*Id.* at pp. 7269–7272.

At this time, the court is aware of "the amount of seniority due to each class member." *Id.* at 7271. Further, the court can "determine exactly what effect an immediate implementation of the award of retroactive competitive seniority would have on the rights of male policemen." *Id.* Having thoroughly reviewed the relevant pleadings, heard oral argument and being otherwise familiar in the premises, the court finds that "a failure to grant the requested relief would clearly undermine the 'make-whole' purposes of Title VII." *Id.* at 7270. Further, the court is unpersuaded that there exist any "unusual adverse impact[s] ... that would not generally occur in Title VII cases ...", *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), sufficient to justify any less than complete retroactive service credit. Accordingly, the court will grant the motion brought by plaintiff class for an order awarding retroactive service credit for purposes of retirement and pension benefits.

### B. Back Pay

As already noted, the court will not deal with the issue of back pay until it is in a posture to make a disposition on that issue with respect to every class member making such a claim. However, the court does not feel constrained to wait until the individual claims of those class members hired before April 10, 1970 have been finally adjudicated to dispose of the back pay issue. The number of claims being brought and an estimate of the potential value of those claims would be sufficient to allow this court to dispose of the back pay issue.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that the motion brought by plaintiff class for retroactive service credit is GRANTED.

FURTHER, IT IS ORDERED that the motion brought by plaintiff class for back pay is STAYED until such time as the court is in a position to dispose of the back pay issue with respect to all members of plaintiff class bringing a claim for back pay.