Grace SCHAEFER, individually and as representative of a class, Plaintiffs,

v.

Philip G. TANNIAN, Richard Coretti, Coleman Young, the Detroit Police Officers Association, and the Detroit Police Lieutenants and Sergeants Association, Defendants.

No. 73–39943.

United States District Court, E.D. Michigan, S.D.

June 1, 1992.

John R. Runyan, Jr., Sachs, Waldman, O'Hare, Detroit, Mich., for plaintiffs.

James M. Moore, Gregory Moore Jeakle Heinen, Detroit, Mich., for defendant Detroit Police Officers Ass'n.

Terri L. Hayles, Detroit, Mich., for defendant City of Detroit.

Bernard Feldman, Troy, Mich., for defendant Detroit Police Lieutenants and Sergeants Ass'n.

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR BACKPAY

GADOLA, District Judge.

Plaintiffs filed their complaint April 10, 1973. Plaintiffs filed the instant motion for backpay March 16, 1992. Defendants filed their reply April 15, 1992. Plaintiffs have not filed a reply.

### I

This case involves sex discrimination by the Detroit Police Department ["DPD"] against four plaintiff classes of female police officers and applicants. This opinion will first review the determinations of liability and then set out the court's past determinations on relief.

### A

The DPD's liability in this action has long been established. In his May 22, 1974 memorandum opinion, United States District Judge Ralph Freeman found that the DPD had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(2), and the Equal Protection Clause of the fourteenth amendment to the United States Constitution. *Schaefer v. Tannian*, 394 F.Supp. 1128, 1135 (E.D.Mich.1974). This finding was based on the DPD's continued discrimination on the basis of sex in the following ways:

(a) giving written entrance examinations to men more frequently than to women applicants;

(b) having until recently a quota limiting policewomen to a very small percentage of the police employees of the Department;

(c) restricting new policewomen employees almost solely to positions in the

Women's Division or its successor divisions.

*Id.* In his June 18, 1974 order, Judge Freeman also found that the DPD had been and was discriminating on the basis of sex by maintaining and applying separate and unequal entrance requirements, placement tests and eligibility lists for male and female applicants and by excluding female officers from the entry level position of patrolman. *Schaefer v. Tannian*, No. 73–39943, slip op. at ¶¶ 4, 6, 8 & 12 (E.D.Mich. June 18, 1974).

In his July 3, 1974 order, Judge Freeman found that the DPD had historically discriminated against its female police officers in both promotion and assignment. *Schaefer v. Tannian*, 8 Empl.Prac.Dec. ¶ 9605, at 5591 (E.D.Mich. July 3, 1974). Judge Freeman also found that while female sergeants were capable of performing effectively in all of the divisions of the DPD, the number of female sergeants had been limited to the authorized strength of that division. *Id.*[1] The court also found that at all times until 1973, female candidates for promotion to sergeant had been separately listed on sex-segregated promotional lists. *Id.*

In this court's December 16, 1991 memorandum opinion and order, this court found that the DPD had discriminated on the basis of sex in paying female police officers less for performing the same investigative duties as "detectives," an all-male DPD classification. *Schaefer v. Tannian*, No. 73–39943 (E.D.Mich. Dec. 16, 1991). This court stated that:

[t]he defendants' pay scale was a direct reflection of their deliberate discriminatory employment practices. Defendants' exclusion of female officers from positions outside the Women's Division was deliberate and wholly based upon their gender.

*Id.*, slip op. at 5. Outside the Women's Division, the duties performed by female officers were performed by detectives, not

---

1. As of June 6, 1974, there were 1170 male sergeants for 3926 male police officers, roughly one to four (29.8%), and only 13 female sergeants for 101 female police officers, about one to eight (12.1%). *Id.* at para. 9.

patrolmen. *Id.* at 2. Moreover, in December of 1970, the "detective" classification had been eliminated; and all male detectives were promoted to "sergeant investigators" or non-uniformed sergeants, increasing the wage disparity between male and female police officers who performed the same duties. *Id.* at 3.

### B

Judge Freeman also issued a series of remedial orders following his determinations of liability. In his May 13, 1974 preliminary injunction, Judge Freeman enjoined many of the discriminatory hiring and assignment practices discussed above and ordered the DPD to hire one, qualified, female applicant for each male hired until the list of eligible female applicants prior to the date of the injunction was exhausted. *Schaefer v. Tannian*, No. 73–39943, slip op. at ¶ 5 (E.D.Mich. May 13, 1974). A second preliminary injunction addressed the DPD's promotional discrimination, requiring the DPD to promote nineteen female officers to the rank of sergeant and thereafter to promote without regard to gender. *Schaefer v. Tannian*, No. 73–39943 (E.D.Mich. June 7, 1974).

Subsequently, Judge Freeman awarded retroactive seniority for purposes of layoff and recall to "all identifiable female victims of [DPD's] illegal hiring discrimination, dating back to the date of their first written application which would have been accepted by the [DPD] had the applicant been male." *Schaefer v. Tannian*, No. 73–39943, slip op. at 1 (E.D.Mich. Sept. 17, 1976). Between July 23, 1980, and December 5, 1985, special master George T. Roumell, Jr. heard claims for seniority relief from 487 class members whose seniority had not been voluntarily adjusted in accordance with the court's order.

> Judge Freeman later ruled that while the plaintiffs are entitled to retroactive seniority for all purposes for which such seniority is used in determining a police officer's entitlement to competitive and non-competitive benefits,

*Schaefer v. Tannian*, 17 Empl.Prac.Dec. ¶ 8642, at 7270 (E.D.Mich. Aug. 4, 1978),

the implementation of seniority relief for purposes other than layoff and recall would not be ordered

> until such time as a final award of seniority has been made to each class member and the Court has had the opportunity in further proceedings to determine the effect that implementation of such relief will have on the non-victim employees of the police force.

*Id.* at 7271 (footnote omitted). On October 19, 1988, Judge Freeman implemented the seniority relief previously awarded for all purposes for which seniority or length of service is used in determining an officer's entitlement to competitive and noncompetitive benefits but reserved the issues of backpay and retroactive service credit for purposes of pension/retirement. *Schaefer v. Tannian*, No. 73–39943 (E.D.Mich. Oct. 19, 1988). Finally, this court granted plaintiffs' motion for an order awarding retroactive service credit for purposes of pension and retirement. *Schaefer v. Tannian*, 762 F.Supp. 716 (E.D.Mich.1991).

█ Plaintiffs now move this court to award backpay to those members of the class found to be victims of the DPD's adjudicated discrimination in hiring, assignment, promotion and compensation.

### II

Section 706(g) of Title VII grants district courts the power to award backpay in cases brought under Title VII. 42 U.S.C. § 2000e–5. The United States Supreme Court has affirmatively stated that

> [t]he power to award backpay was bestowed by Congress, as part of a complex legislative design directed at a historic evil of national proportions. A court must exercise this power "in light of the large objectives of the Act." ... It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) (quoting *Hecht Co. v. Bowles,* 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944)) (footnote omitted). The United States Court of Appeals for the Sixth Circuit has flatly stated that

> in the absence of exceptional circumstances, backpay should *always* be awarded when a Title VII violation is found. The special factors which would constitute exceptional circumstances and prevent backpay awards are exceedingly rare.

*Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 626 (6th Cir.1983) (citations and footnote omitted) (emphasis added), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); *see also Wheeler v. Southland Corp.,* 875 F.2d 1246, 1251 (6th Cir.1989); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir.1988).

Defendants argue that seven special circumstances should dissuade this court from imposing a backpay award. First, defendants argue that their good faith, or lack of bad faith, in implementing the discriminatory policies militates against a backpay award. However, the Supreme Court has stated that:

> the mere absence of bad faith simply opens the door to equity; it does not depress the scales in the employer's favor.... Title VII is not concerned with the employer's "good intent or absence of bad intent" for "Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation."

*Albemarle,* 422 U.S. at 422, 95 S.Ct. at 2374 (quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971)) (emphasis in original); *see also Rasimas,* 714 F.2d at 626 ("[T]he arguable good faith of the defendant employer [does not] constitute exceptional circumstances"). Defendants asserted good faith does not prevent this court from ordering backpay.

Second, defendants contend that the relief previously granted by this court and Judge Freeman "makes whole" the plain-

tiff class in terms of relief. Specifically, defendants point to the grant of retroactive seniority. However,

> section 706(g) ... requires that persons aggrieved by the consequences and effects of the unlawful employment practices be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.

118 Cong.Rec. 7168 (1972) (statement of Sen. Williams), *as quoted in Albemarle,* 422 U.S. at 421, 95 S.Ct. at 2373. Further, the Supreme Court has reaffirmed that the policy behind the backpay provision contained in section 706 is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Id.* at 418, 95 S.Ct. at 2372; *see also Gutzwiller,* 860 F.2d at 1333. To grant retroactive seniority and other relief without granting backpay would not make plaintiffs "whole."

Defendants' third argument is that the lengthy passage of time since the initial complaint somehow prejudices defendants. This court does not agree. As this court has already stated in a previous ruling in this case, the doctrine of laches does not apply to this case or any case where a complaint is timely filed. *Schaefer v. Tannian,* No. 73–39943, slip op. at 8 (E.D.Mich. Dec. 16, 1991). The case of *Boone v. Mechanical Specialties Co.,* 609 F.2d 956 (9th Cir.1979), stands squarely for the proposition that laches does not affect a complaint after it has been filed.

> Laches is an equitable time limitation on a party's right to *bring* suit.... It protects against difficulties caused by the unreasonable delay in bringing an action, *not against problems created by the pendency of a lawsuit after it is filed.*

*Boone,* 609 F.2d at 958 (emphasis added); *see also Shouse v. Pierce County,* 559 F.2d 1142, 1147 (9th Cir.1977); *Coleman v. Block,* 663 F.Supp. 1315, 1329 (D.N.D. 1987), *judgment vacated sub nom. Coleman v. Lyng,* 864 F.2d 604 (8th Cir.1988), *cert. denied sub nom. Coleman v. Yeutter,* 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). Upon the weight of

150

the authority, defendants' laches defense will fail.

Defendants' fourth argument, that they will be prejudiced by the award of backpay, is basically a mirror image of their laches argument. Defendants assert that it will be impossible to recreate the pay structure and take into account all mitigating circumstances after twenty years. However, "the difficulty of calculating the backpay award [does not] constitute exceptional circumstances" thereby precluding an award of backpay. *Rasimas*, 714 F.2d at 626 (citing *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 877 (6th Cir.1973)); *see also Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 880 (6th Cir.1991). Therefore defendants' fourth argument is without merit.

Fifth, defendants assert that the award of backpay would be a windfall to plaintiffs. Defendants state that the relief already granted is sufficient, and no further remedial measures need be taken in order to make the plaintiffs "whole." Once again, defendants' fifth argument is similar, if not identical to, defendants' second argument, that is, Judge Freeman's previous grants of relief are sufficient. Once again, this court believes that, in order to make the plaintiffs "whole," it is necessary to restore plaintiffs "to a position where they would have been were it not for the unlawful discrimination." 118 Cong.Rec. 7168 (1972) (statement of Sen. Williams), *as quoted in Albemarle*, 422 U.S. at 421, 95 S.Ct. at 2373. An award of backpay would aid in placing plaintiffs in such a pre-discrimination position and would not constitute a windfall.

Sixth, defendants contend that third parties would be adversely affected by an award of backpay and, therefore, such an award should not be granted. These third parties are the police officers hired after 1978 and the taxpayers of the City of Detroit. The Supreme Court set out a policy of protecting "innocent third parties" from retroactive liability. *City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702, 722–23, 98 S.Ct. 1370, 1382–83, 55 L.Ed.2d 657 (1978). However, the *Manhart* court dealt with a sex-differentiating pension fund, not individual officers and taxpayers. The officers hired after 1978 will be affected by an award of backpay only if the DPD carries out its threat to layoff 944 officers due to the financial strain of the backpay award. The threatened layoffs are not a certainty and can be avoided if defendants avoid a lump sum payment and work out a payment schedule with plaintiffs. Further, the argument that harm to the taxpayers will result from an award of backpay is misplaced.

> After all, it is the public at large which enjoys the benefits of the government's activities, and it is the public at large which is ultimately responsible for its administration. Thus ... it is fairer to allocate any resulting financial loss to the inevitable costs of government borne by all the taxpayers, than to allow its impact to be felt solely by those whose rights ... have been violated.

*Owen v. City of Independence*, 445 U.S. 622, 655, 100 S.Ct. 1398, 1417–18, 63 L.Ed.2d 673 (1980) (footnote omitted); *see also Gurmankin v. Costanzo*, 626 F.2d 1115, 1124 (8th Cir.1980). The resulting taxpayer harm must bend to the actual harm inflicted upon plaintiffs.

Finally, defendants argue that an award of backpay will merely punish defendants rather than achieve compliance with Title VII. It is true that the policy behind section 706(g) is compensatory rather than punitive. However, an award of backpay in this instance is necessary to "make whole" the plaintiffs.

> The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.

*Wicker v. Hoppock*, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867), *as quoted in Albemarle*, 422 U.S. at 418–19, 95 S.Ct. at 2372–73. True, the award of backpay may work some financial distress upon defendants. However, this does not transform a purely compensatory remedy into a punishment.

## ORDER

For the foregoing reasons, it is hereby ORDERED that plaintiffs' motion for backpay is GRANTED.

It is further ORDERED that plaintiffs and defendants submit within ten (10) days from the date of this order a list of candidates for special master to oversee the compensation of plaintiffs.

SO ORDERED.